NATHANIEL WEBSTER, PLAINTIFF IN ERROR, VS. JOHN POWELL, ET AL., DEFENDANTS IN ERROR.

1. The provision in section 16 of Article III of the Constitution, that each law enacted in the Legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title, is mandatory, and its restriction should be enforced in all cases falling within the mischiefs intended by it to be remedied, while in cases not coming within such mischiefs a liberal construction should obtain in favor of the law making power.

2. One purpose of section 16 of Article III of the Constitution was to prevent fraud or surprise upon legislation by means of false and deceptive titles to statutes calculated to mislead members of the Legislature into voting for bills containing provisions of which the titles give no intimation.

3. An amendatory act does not sufficiently express its subject when it gives simply the number of the section of the Revised Statutes intended to be amended, without also correctly stating the subject of such section.

4. Chapter 4414, acts of 1895, entitled, "an act to amend sections 1270 and 1272 of the Revised Statutes of the State of Florida, relating to supersedeas orders and supersedeas bonds," is void, on the ground that its title is false and deceptive, and in violation of section 16 of Article III of the Constitution.

Appeal from the Circuit Court for Duval county.

The facts in the case are stated in the opinion of the court.

Motion for issuance of writ of Error.

*A. W. Cockrell & Son,* for Motion.

### BRIEF FOR MOVEANT.

We concede if Chapter 4414, act of 1895, is a constitutional exercise of legislative power, the motion should be denied. Our sole contention is that it is not law.

The constitutional provisions bearing on the question are:

### CONSTITUTION OF FLORIDA.

Bill of Rights, section 4. "All courts in this State shall be open, so that every person for an injury done him in his lands, goods, person or reputation shall have remedy, by due course of law, and right and justice shall be administered without sale, denial or delay."

Sec. 5, Art. 5. "The Supreme Court shall have appellate jurisdiction in all cases at law and in equity originating in the Circuit Courts, and of appeals from the Circuit Courts in cases arising before judges of the county courts in matters pertaining to their probate jurisdiction and in the management of the estate of infants, and in cases of conviction of felony in the criminal courts, and in all criminal cases originating in the Circuits Courts. The court shall have the power to issue  *  *  *  also all writs necessary or proper to the complete exercise of its jurisdiction."  *  *  *

### CONSTITUTION OF THE UNITED STATES.

Article 14, section 1. No State "shall deny to any person within its jurisdiction the equal protection of the laws."

1. At common law, a writ of error lies as a matter of right, in all cases, either civil or criminal, except in treason and felony, and the doctrine is well recognized that whenever a new jurisdiction is erected by act of Parliament, and the court or judge that exercises this

jurisdiction, acts as a court of record according to the course of the common law, a writ of error lies on their judgment; but if they act in a summary way, or in a new course different from the common law, a writ of error will not lie but a certiorari.

2. The right to a writ of error exists independently of any statutory or constitutional provisions by force of the common law, in all cases in which the appellate jurisdiction is invoked to review the judgments of inferior courts, rendered in the exercise of jurisdiction according to the course of the common law.

3. The only mode at common law in which a cause could be removed from an inferior court exercising jurisdiction according to the course of common law, to a superior court, in the exercise of appellate jurisdiction, was by a writ of error.

4. The mode of calling into exercise the appellate jurisdiction of a supervising court over an inferior court, *by appeal*, as distinguished from *writs of error*, is purely statutory and cumulative; and the granting or withholding this mode, and the conditions under which it may be exercised, are wholly within the control of the Legislature under the Constitution.

5. A State Constitution is always interpreted in the light of the common law, and if it be not the first Constitution, in the light of its predecessors. Rules of statutory construction are of limited application in the construction of the Constitution. The safe rule of constitutional construction is to regard, not so much the form or manner of expression, as the nature and objects of its provision and the end to be accomplished, giving its words their just and legitimate meaning.

6. For the courts to disregard the expressed will of the Legislature, it is not required that it should be

*clearly demonstrated* to be unconstitutional; nor that the existence of conflict between this will and the Constitution should admit of no reasonable doubt. The rule is, the burden is upon him who assails an act as unconstitutional, to make it clear the Legislature has transcended its authority.

7. Constitutional provisions for the protection of life, liberty and property are to be largely and liberally construed in favor of the citizen.

8. The terms "remedy by due course of law," found in section 4, Bill of Rights, had a settled common law signification when inserted therein—"a course or mode of proceeding according to the well-settled maxims of law."

What is a writ of error—its essential characteristics? We insist—

1. It is the mode, the *only* mode, known to common law procedure, whereby a cause is removed for the purpose of review from an inferior court exercising jurisdiction according to the course of the common law, to a supervising court.

2. It is issued out of the supervising court.

3. It was a writ "ex debito justitiæ."

4. It was an original writ, based upon matter of record it is true, but *still* an original writ, by which a new action based upon a record is instituted.

The constitutional grant vesting *appellate* jurisdiction in the Supreme Court in *all* cases at law and in equity is equally as full, cogent and mandatory as the constitutional grant vesting *original* jurisdiction in all cases in equity, and in *all* cases in law not cognizable by inferior courts, in the Circuit Courts. The Legislature has no more power to hinder, embarrass or impair the *appellate* jurisdiction vested in the Supreme Court than it has to hinder, embarrass or impair the

original jurisdiction so vested in the Circuit Courts. The jurisdiction in each, and alike and equally, is protected by the Constitution from legislative hindrance, embarrassment or impairment.

A congested docket, created by the nature or amount of business in the one or the other, may hinder, embarrass or impair the practical utility to the suitor of his right to invoke the one jurisdiction or the other; but the right itself to invoke the jurisdiction, to place his cause, and his right to be heard thereon in the orderly administration of that jurisdiction, alike in the Supreme Court and in the Circuit Court, is secured to him by section 4 of the Bill of Rights.

And this provision of the Bill of Rights is equally effective, whether the right claimed, or the wrong to be redressed, is asserted by the suitor asking that the court be opened to him, or whether the right claimed, or the wrong to be redressed, is asserted in defensive pleadings of the suitor, in due course of law, after his adversary has there impleaded him.

The grant of "appellate jurisdiction" carries with it, embraces *ex necessitate rei*, every incident necessary to make the grant effectual. Such a grant, construed in the light of the common law and the previous Constitutions, involves the right and imposes the duty upon the court, in which appellate jurisdiction is so vested, to issue, at the suit of the suitor, complaining that a wrong has been done him in the record of the cause in the Circuit Court, to which the writ is directed, a writ of error, the *only* mode known to the common law by which a cause can be removed to a superior court from an inferior court exercising jurisdiction according to the course of the common law; and the invocation of this writ is the institution of a new suit in the appellate court.

This grant, standing alone, unaided by other constitutional provisions, and interpreted in the light of the common law, as the Constitution-makers are presumed to have intended, and as we are bound to construe it, would confine this court to this single though expansive common law writ of error as the only method open to the suitor by which he may invoke its appellate jurisdiction to be exercised, as a *remedy in due course of law* for an *injury* done him in his lands, goods, person or reputation, made manifest in the records of an inferior court exercising its jurisdiction according to the course of the common law.

The *right* to invoke *this* common law writ, it necessarily follows, exists independently of statute. The Legislature does not confer it. It pertains to, and is an essential part of, the constitutional grant of appellate jurisdiction to the Supreme Court.

The Legislature can not *impair* it to the suitor; the Supreme Court can not withhold it from him, at the dictation of the Legislature, without abnegating its constitutional functions.

But this grant does not stand alone. Plenary as it is, the Constitution-makers were unwilling that this court should be hampered, hindered or embarrassed by legislative or other authority in the exercise of its "appellate jurisdiction in all cases at law and in equity originating in the Circuit Court." So they inserted the sweeping provision, that the Supreme Court shall have the power to issue "all writs necessary or proper to the complete exercise of its jurisdiction."

Conceding, for the purposes of this argument, the Legislature has the right, incident to the constitutional power of legislation vested in it, to grant or withhold, the right to a *suspensive* writ of error, or to surround its exercise with such conditions as may be prescribed,

Nsthaniel Webster v. John Powell et al.—Argument of Counsel.

the question presented by the legislation assailed is, has the Legislature the constitutional authority to shut the door of the Supreme Court, in the face of a suitor, applying for a common law writ of error to the Circuit Court, in which against whom a final money judgment has been rendered in the exercise of jurisdiction according to the course of the common law, unless and until, and except, the suitor shall have given and filed the bond required by sec. 1272 Revised Statutes, as amended by sec. 2 of Chapter 4414, acts of 1895.

We insist such legislation is subversive of the constitutional jurisdiction of the Supreme Court.

If this legislation is within the constitutional competency of the law-making power, the appellate jurisdiction of the Supreme Court can not be exercised in all cases originating in the Circuit Court; it can be exercised *only* in those cases where the plaintiff in error, being a defendant against whom a money judgment has been rendered in the Circuit Court, is able to give bond, with two good and sufficient sureties, in a sum sufficient to cover the amount for which the judgment was given, together with costs, conditioned to pay the amount of the judgment, interest and costs, and damages, if any, given by the appellate Court, in case the said judgment be affirmed by the appellate court, or in case the said writ of error be quashed, or said appellate proceedings be dismissed. Yates vs. People, 6 Johnson 336; Snydam vs. Williamson, 20 How. 290; Haines vs. The People, 97 Ill. 161; Greene vs. Briggs, 1 Curtis, 311; S. C. 15 Law Rep. 614; S. C. 10 Fed. Cases, No. 5764, p. 1135.

If the right of a defendant, against whom a money judgment has been rendered, in the Circuit Court, in the exercise of jurisdiction according to the course of

the common law, to institute a new suit in the appellate court, by writ of error, has been guaranteed to him in the constitutional provisions quoted, that right is just as sacred as the right to a trial by jury, or any other right protected by the Constitution. And the Legislature is equally inhibited from impairing it, or hindering it, or embarrassing it by making it dependent upon his giving a bond, with surety, for the payment of the judgment sought to be reviewed.

The Supreme Court of Florida is not a statutory court; nor is it a constitutional court ordained by that instrument, "under regulations which shall be established by the Legislature." But it is a constitutional court, created by the Constitution, and vested by that instrument, without qualification, with *appellate* jurisdiction "in all cases originating in the Circuit Court."

"Our law," says Clinton, Senator, in Yates vs. People, *supra*, decided in the year 1810, "considers it an essential right of a suitor to have his cause examined in tribunals superior to those in which he considers himself aggrieved. In England a writ of error is defined (Bac. Abr.) a commission to judges of a superior court, by which they are authorized to examine the record upon which a judgment was given in an inferior court, and on such examination to affirm or reverse the same according to law. In the case of the Lord Mayor of London, 3 Wils, 193, Lord Chief Justice De Grey said, "In all cases except treason and felony, I think a writ of error is grantable of right." In the case of Queen vs. Paty et al., 2 Salk. 504, it is stated, "that a new question was started and referred to the judges, whether the Queen ought to allow a writ of error, in that case or in any other case, *ex debito justitiæ* or *ex mere gratia*. And ten of the judges were

of opinion that the Queen could not deny the writ of error, but it was grantable *ex debito justitiæ*, except only in cases of treason and felony. And the two other judges held that the subject could not of right demand them in any criminal case." "This," says Clinton, Senator, "is the settled law of England."

Further, refering to the "act concerning the rights of the people of this State" which he says is principally a transcript of the English Bill of Rights, declaring "That neither right, nor justice shall be sold to any person, nor denied, nor deferred; and that writs and process shall be granted freely and without delay to all persons requiring the same," he adds "The phraseology of the first statute precludes all idea of a right to deny a writ of error." "On making the demand, the appellant has a right to the writ, in the same manner that any other person has on a similar application to any other court or officer." "An inhibition of a writ of error, except in capital cases, is a violation of our Bill of Rights, and an attack upon the privileges of citizens of this State."

How, we submit, can "*all* courts in this State" be adjudged to "be open, *so* that every person for *any* injury done him in his lands, goods, person or reputation" "shall have remedy by due course of law," and so that "right and justice shall be administered without sale, denial or delay," if the Legislature or any other authority under the Constitution is permitted to close the door of the Supreme Court upon a suitor for a writ of error, unless and except and until he give the bond prescribed by Chapter 4414.

In Yates vs. The People, there was no dissent from the proposition laid down by Clinton, Senator, that: "A judgment is the decision of the court upon the case before it, and the last or final determination of the

tribunal is the proper subject for a writ of error." . In this case, Chancellor Kent, who was in favor of dismissing the writ, because the order of the Supreme Court to reverse which the writ was brought, rested in discretion, yet insisted that a writ of error would lie on a definitive judgment.

The case of Haines vs. The People, 97 Ill. 161, is of special value. The whole subject is considered, and cases reviewed. In the course of the discussion this case was considered: Under the Illinois Constitution of 1818, vesting in the Supreme Court appellate jurisdiction only, except in certain enumerated cases, the Legislature passed an act allowing appeals from the Circuit Court to the Supreme Court, "in all cases where the judgment or decree appealed from be final and shall amount to $20.00 or relate to a franchise or a freehold."

It was held an appeal, under this statute, would not lie where the judgment appealed from exclusive of costs was less than $20.00; but this case was in terms overruled; and the principles compelling this overruling were discussed in 97 Ill. 167.

But if the Legislature could "so regulate" writs of error, or the practice thereunder, as to inhibit to the Supreme Court, except under the conditions prescribed in Ch. 4414, its issuance in support of the appellate jurisdiction of the Supreme Court, it has not done so, in accordance with the constitutional limitations upon law-making. A writ of error is wholly distinct from a writ of supersedeas. These writs perform wholly distinct functions. These writs may and frequently do co-exist. But there is no logical or necessary connection between them. Until the statute assailed was passed these writs had existed apart during the entire legislative and judicial history of the State of Florida.

"'A writ of error," says Andrews' Stephens' Pleading, edition of 1894, p. 201, n. 1, "was formerly an original writ issuing out of chancery, but in modern practice it is a judicial writ sued out of the appellate tribunal, and is an entirely new writ; it does not *per se* affect the judgment, which may be executed while the writ is pending, unless a supersedeas issues to stay proceedings."

There is nothing in the title of the act to embrace legislation other than the amendment of sections 1270 and 1272 of the Revised Statutes, "*Relating to Supersedeas Orders and Supersedeas Bonds.*" There is nothing whatever in section 1270, "Relating to supersedeas orders or supersedeas bonds," so it is, the proposed amendment can not constitutionally touch section 1270, seeing such section has no relation to supersedeas orders or supersedeas bonds. And so it is, the proposed amendment must expend itself on section 1272. Recurring now to section 1272, it is seen that section concerns itself not with the issuance of a writ of error, but *solely* in prescribing the conditions under which it may operate, not as a writ of error, transferring the cause to the Supreme Court, but *as a writ of supersedeas* of the judgment appealed from.

The body of the act assailed, however, concerns itself with the *issuance* of a writ of error, *as distinguished* from its operation as a writ of supersedeas, and declares, "Before any writ of error shall be issued in favor of the party against whom a judgment has been rendered, he shall file" the bond prescribed.

While there is absolutely nothing in the title to indicate a legislative purpose to place an inhibition, under any circumstances, upon the courts as to granting writs of error, it is positively *misleading*, in that under cover of *amending* sections 1270 and 1272, and

*confining* the amendment to supersedeas orders and supersedeas bonds, the act puts an inhibition upon granting writs of error, by making them wholly dependent upon a writ of supersedeas, of which writ, writs of error were theretofore wholly independent. Nay, more, the whole scope and effect of the act is *not* to amend the statute as to *writs of supersedeas*, but to amend it as to *granting* writs of error.

MABRY, C. J.:

Judgment was obtained by John Powell against Nathaniel Webster and E. Rigney in the Circuit Court for Duval county, and Webster desires to prosecute a writ of error from the judgment, but Rigney refuses to join therein. Webster filed with the Clerk of the Circuit Court for Duval county a *præcipe* for writ of error, reciting therein that Rigney refused to unite in the writ, and it appears that he complied with the law in reference to suing out writs of error in every respect, except giving the bond required by Chapter 4414, laws of 1895. The Clerk of the Circuit Court refused to issue the writ solely because the said bond was not given, and Webster applied to the clerk of this court to issue the writ. No bond as required by the act mentioned having been executed, the clerk of this court declined to issue the writ without directions from the court, and Webster has renewed his motion here for the issuance of the writ without the required bond.

This motion involves solely the constitutionality of Chapter 4414, laws of 1895; it being conceded that if this act was constitutionally passed, the writ should not issue without executing the bond required by it. The validity of the act in question is assailed in two grounds. One is that the title is insufficient to author-

ize the provisions found in the body of the act; and the other is that the common law writ of error is a writ of right secured to the citizen by provisions of our constitution, and that the Legislature can not impair it by executing the bond provided by the statute as a condition of its employment. The title of the act is "An act to amend sections 1270 and 1272 of the Revised Statutes of the State of Florida, relating to supersedeas orders and supersedeas bonds."

Our Constitution provides (sec. 16, Art. III) that "each law enacted in the Legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title; and no law shall be amended or revised by reference to its title only; but in such case the act, as revised, or section, as amended, shall be re-enacted and published at length." Such constitutional provisions are not of English origin, but of American growth, and they were designed to arrest certain abuses that had developed in legislation under our systems of government. What those abuses were, and the purpose for which such provisions were incorporated into organic law, are clearly shown by the judicial discussion that has arisen in the interpretation of such laws. We have recently had occasion to consider the purpose and meaning of the provision of our Constitution as applied to certain acts of legislation, in the cases of State ex rel. vs. Green; County Commissioners vs. City of Jacksonville, and State ex rel. vs. Hocker, Judge, decided at this term, and we need not go over again the ground covered by these decisions. The provision of the Constitution mentioned is mandatory, and it is the duty of the court to enforce it. It is stated by Sutherland on Statutory Construction, sec. 82, that "the courts with great

unanimty enforce this constitutional restriction in all cases falling within the mischiefs intended thereby to be remedied, and, in cases not within those mischiefs, they construe it liberally to give convenient and necessary freedom, so far as is compatible with the remedial measure, to the law making power." The true view is to construe the provision so as to prevent the evils designed to be arrested by it, and at the same time in the accomplishment of proper legislation it should not be expounded in a strict or technical sense. One of the objects of the provision, as stated by Cooley (Constitutional Limitations, p. 172) was "to prevent surprise or fraud upon the Legislature by means of provisions in bills of which the titles give no intimation, and which might therefore be overlooked and carelessly and unintentionally adopted." The history of legislation had shown that by adroit management provisions had been incorporated into measures in no way indicated by the title, and that members of the Legislature had voted for such measures in ignorance of such provisions. The framers of the Constitution designed to put a stop to the enactment of laws with such titles. The title of an act in Michigan was "An act to provide for the election of two justices of the peace, and for the appointment of a justice clerk and room for holding justice court, in and for the city of Grand Rapids, and to define their jurisdiction, and to fix their compensation; and to repeal an act to provide for the election of four justices of the peace in and for the city of Grand Rapids, and to define their jurisdiction, and fix their compensation, approved March 11, 1891, and all acts and parts of acts in any wise contravening to the provisions of this act." At the time of the passage of the act there were four justices of the peace in office in the city of Grand

Rapids, and in the body of the act two of them were legislated out of office. The court said: "No one, in reading the title of this act while it was a bill before the Legislature, would have been apprised that the offices of respondent and Justice Hughes were not only to be abolished, but that they were to be deprived of holding the same after the fourth day of July, 1889. If one can gather from the clause in the title in relation to the repeal of the act of 1881, which provides for four justices, that the intention and purport of the bill might be to decrease the number of justices from four to two, yet there is not the slightest hint therein that any of the justices already in office should be deprived of their terms, or, if so, which one; or two, of them was thus to be legislated out of office. The notice in the title, which the Constitution imperatively requires, was therefore not given, and the plain purpose of the constitutional mandate evaded and violated." Brooks vs. Hydorn, 76 Mich. 273, 42 N. W. Rep. 1122. The title of an act in Wisconsin was "An act to legalize and authorize the assessment of street improvements and assessments," and the provisions in the act were confined exclusively to the city of Janesville. The court said: "No one reading this title would for a moment suppose that the sole purpose of the law was to legalize the proceedings of the common council of the city of Janesville in making these special assessments. It is true, the act embraces but one subject-matter. It does not unite various matters having no necessary or natural connection with each other. It is not, therefore, open to objection under the first clause of the provision. But there is no reference in the title to the city of Janesville or any other locality. And it would seem impossible to devise a title, more calculated to mislead and throw

off suspicion or inquiry as to the real subject of the act, than the one employed on this occasion. To sanction such a procedure would be to override and nullify a clear, plain and mandatory provision of the Constitution." Durkee vs. City of Janesville, 26 Wis. 697. So it was held in New Jersey (Coutieri vs. New Brunswick, 44 N. J. L. 58), that the following title: "An act to fix and regulate the salaries of city officers in cities in this State," was a mistatement of the object of the act, which was to fix and regulate, exclusively, the salaries of the officers of the city of New Brunswick. The court said: "The purpose of the Constitution in this requirement (as to expressing the subject in the title) is to prevent fraud upon legislation by means of false and deceptive titles to statutes. In this instance the title is both false and deceptive; false, as it imports a regulation of a class of cities, when in truth it is applicable to a single city; deceptive, because no one, on reading such title, could reasonably understand that the body of the act was to have so limited an effect." So an act entitled "An act to incorporate the Schenectady Astronomical Observatory," and providing for an incorporation by that name, and directing the comptroller to loan to the incorporation $60,000 of the capital of the common school fund, to be secured by mortgage upon the observatory and site, was held unconstitutional on the ground that the subject of the loan was not expressed in the title. People ex rel. vs. Allen, Comptroller, 42 N. Y. 404. As to the insufficiency of acts of legislation having false and delusive titles, see, also, People ex rel. vs. Commissioners of Highways of Palatine, 53 Barb. 70; Moses & Beebe vs. Mayor, etc., of Mobile, 52 Ala. 198.

It is evident from reading the act (Chapter 4414,

laws of 1895) that one of its main purposes is to re-
quire defendants against whom judgments have been
rendered in the trial court to execute bonds with two
good and sufficient obligors in sums sufficient to cover
the amounts for which the judgments were rendered,
as a condition to their right to have the cases reviewed
on writ of error in the appellate court. Never before
in the history of this State has such legislation been
attempted. Even should we concede that the Legisla-
ture has the power to prescribe such a prerequisite to
the right of suing out a common law writ of error, it
must be admitted that such a law would be extremely
harsh and oppressive. That such was the purpose of
the act in question, admits of no doubt, and a remark-
able feature of it is that such purpose was attempted
to be accomplished by an act entitled "an act to amend
sections 1270 and 1272 of the Revised Statutes of the
State of Florida, relating to *supersedeas orders and
supersedeas bonds.*" Section 1270 relates to the issu-
ance of writs of error, and in no way refers to super-
sedeas orders and supersedeas bonds, and so far as this
section is concerned, there is nothing expressed in the
title in reference to writs of error, unless the mention
of the section by number will suffice. There is some
conflict in the authorities as to whether an amenda-
tory act sufficiently expresses its subject when it gives
simply the number of the section of the Revised Stat-
utes intended to be amended without also correctly
stating the subject of the section; but under a Consti-
tution like ours, requiring the subject of an act to be
*expressed* in the title, the better view is that an amen-
datory act does not sufficiently express a subject of a
section in the Revised Statutes by merely referring to
its number. Harland vs. Territory of Washington, 3
Wash. Ter. 131; The Borrowdale, 39 Fed. Rep. 376;

People ex rel. vs. Hills, 35 N. Y. 449; People ex rel. vs. Briggs, 50 N. Y. 553; Tingue vs. Village of Port Chester, 101 N. Y. 294, 4 N. E. Rep. 625; People ex rel. vs. Judge of Superior Court, 39 Mich. 195; State *ex rel.* vs. Algood, 87 Tenn. (3 Pickle), 163, 10 S. W. Rep. 310; State vs. Bowers, 14 Ind. 195; Wall vs. Garrison, 11 Colo. 515, 19 Pac. Rep. 469. So, in reference to the act before us, we can not eliminate the words in the title, "relating to supersedeas orders and supersedeas bonds," and consider the mere mention of the number of the section as a sufficient expression of a subject in the title. The phrase, "relating to supersedeas orders and supersedeas bonds," can not help the act so far as section 1270 is concerned, because it falsely states and misrepresents the subject-matter of that section, as it does not in any way deal with supersedeas orders or bonds. There can be no doubt that the act is entirely inoperative as a direct amendment of section 1270.

Section 1272 does not provide for or regulate the issuance of writs of error, but it does provide the conditions upon which such writs shall operate as supersedeases, and to that extent it relates to supersedeas orders and supersedeas bonds. An act confined to the granting of supersedeas orders and the giving of supersedeas bonds, with a title to amend section 1272, relating to supersedeas orders and bonds, would be in compliance with the mandate of the Constitution as to the expression of the subject-matter in the title. But a supersedeas and a writ of error are entirely different things. A writ of error does not *per se* affect the judgment, which may be executed while the writ is pending, unless a supersedeas issues to stay the proceedings. Under the title to amend sections 1270 and 1272, relating to supersedeas orders and supersedeas

bonds, the act under consideration provides, among other things, that before a writ of error shall issue in favor of a party against whom a judgment has been rendered in the court below, he shall file a bond, payable to the adverse party, with two good and sufficient obligors, in a sum sufficient to cover a money judgment rendered against him, together with costs, and conditioned to pay the amount of the judgment, with interest, costs and damages, in case the judgment be affirmed, the writ of error quashed, or the appellate proceedings dismissed. The title stated is calculated to warn members of the Legislature that the act dealt only with supersedeas orders and supersedeas bonds, and contained no intimation that such a radical change in reference to the right of suing out a writ of error was designed. Supersedeases are made operative by the giving of bonds, and the idea of a bond in connection with a supersedeas was not unusual. The purpose of the constitutional provision was, as fully shown by the authorities cited, to prevent surprise or fraud upon the Legislature by means of false and deceptive titles to statutes, and we are of the opinion that the title to the act we are considering is of that character. It does not contain such an expression of the subject dealt with in the bill as to apprise the legislators of the real object sought to be accomplished by the amendment. Under such a title, calculated so easily to mislead members as to the true purpose of the act, and containing as it does such extraordinary provisions, extending in some cases to great hardship, if not to the denial of natural rights, should not be sustained. We are of opinion that the entire act is void on the ground stated, and so declare it. The provision in the second division to section two, in reference to super-

sedeas orders, is so dependent upon the other provisions of the act as to fall with them.

We do not consider the other ground urged as a reason why the act is void, as it is not necessary.

The clerk of this court will issue the writ of error prayed for in the motion, and it will be so ordered.