NEILL G. WADE, APPELLANT, v. ATLANTIC LUMBER COM-
PANY, A DOMESTIC CORPORATION, APPELLEE.

1. When the journals of the Legislature speak as to the title
of an act and the enrolled bill contains a variance there-
from, the journals will control.

2. The title "An Act to incorporate the Atlantic Suwannee
River and Gulf Railroad Company" is not sufficiently
broad to apprise the Legislature and the people that a land
grant to be selected by the company from the State at
large will be included thereunder; and such grant not
being within the subject expressed in the title is void.

3. The mere fact that legislative grants have been at various
times included in acts with titles too restrictive is not
sufficient to force the courts to disregard a plain mandate
of the constitution directed against surreptitious ·legisla-
tion.

This case was decided by the Court En Banc.

Appeal from the Circuit Court for Taylor County.

The facts in the case are stated in the opinion of the
Court.

*Wm. Wade Hampton, R. W. Williams, W. S. Jennings*
and *Bryan & Bryan,* for Appellant.

*Maxwell & Reeves* and *Jno. T. Walker,* for Appellee.

COCKRELL, J.   The Atlantic Lumber Company, claim-
ing as assignee of the Atlantic, Suwannee River & Gulf
Railway Company, filed its bill of complaint in the Cir-
cuit Court for Taylor county against Neill G. Wade, pray-

ing that the said Wade be decreed to hold certain "swamp and overflowed" lands deeded to him by the Trustees of the Internal Improvement Fund, in trust for the complainant, and that it be adjudged that the complainant is the rightful owner of the lands there; were prayers for injunctions and general relief. To this bill a demurrer was interposed, and this appeal is taken from the order of the court overruling the demurrer.

Many interesting questions of grave import have been ably and exhaustively argued before us, respecting the power of the legislature to interfere with the Trustees of the Internal Improvement Fund to the extent sought to be done in the instant case and also with reference to the powers, duties and discretions conferred upon the said Trustees by the act of 1855, as also the whole policy and scheme underlying the donation by the United States of the swamp and overflowed lands to the State of Florida.

In view, however, of the conclusions reached by the court, it is not only not necessary to determine these questions, but it would be improper for us to do so. The court should not lightly pass upon the power of a co-ordinate branch, but only when necessity impels such step.

Before we are called upon to pass upon the power of the legislature to make the grant claimed here we are confronted with the preliminary question whether the legislature has sought to exercise such power in the manner and form prescribed by the constitution. And having reached the conclusion that it has not done so, we shall proceed no further.

The complainant below, appellee here, bases its claim solely upon sections nine, ten and eighteen of Chapter 4267 of the laws of 1893. These sections read as follows:

"Sec. 9. That the State of Florida, for the purpose of

aiding the construction of said railroad, its branches and extensions, hereby grants unto said company ten thousand acres of land for each mile of road it may construct, of the lands granted to the State of Florida, under the Act of Congress of September 28th, 1850, and which are commonly known as the swamp and overflowed lands, said lands to be deeded to the company by the Trustees of the Internal Improvement Fund, as fast as each five miles of said road or any of its branches are graded, crosstied and rails laid thereon."

"Section 10. That upon the filing of a certificate of the completion of any five miles of said road or any of its branches, signed by the engineer and president of the said company, it shall be the duty of the Trustees of the Internal Improvement Fund to require the State Engineer or some other competent person to examine and inspect each five miles of road so completed; and on such person's or the State Engineer's report that the five miles are completed as certified, it shall be the duty of the Trustees of the Internal Improvement Fund to issue deeds to the said corporation, as required in the foregoing section; Provided, That the said corporation, its successors and assigns, shall have the privilege of requiring and having from the Trustees of the Internal Improvement Fund a certificate authorizing and entitling it to locate the lands which it may at any time have earned and become entitled to as aforesaid; and whenever and as often as the said corporation shall file with the Trustees of the Internal Improvement Fund a plot and survey of the lands located by it in pursuance of a certificate given it by the Trustees as herein provided, the said Trustees shall set apart and upon demand execute unto said corporation, its successors or assigns, a deed conveying unto it the

lands described in said plot and survey, from the swamp and overflowed lands granted too the State of Florida by the Act of Congress of September 28, 1850; *Provided,* That nothing in this act contained shall make the State of Florida liable by reason of any deficiency there may exist in the public lands belonging to the State under and by virtue of the act of Congress of September 28, 1850."

"Sec. 18. That *whereas* the individuals herein incorporated have already incorporated themselves under the name of the Atlantic, Suwannee River and Gulf Railroad Company, by virtue of letters patent from the Governor of the State, and have begun the construction of the line of railroad contemplated by this act, therefore, *be it enacted,* That the corporate franchise of the last above named corporation shall be merged into the franchise of the Atlantic, Suwannee River and Gulf Railway Company, hereby incorporated, and the corporation so formed by such merger shall exist under and by virtue of the corporate franchise hereby granted with all the privileges granted by this Act; and all the property, rights and privileges of the said Atlantic, Suwannee River and Gulf Railroad Company are hereby vested in the Atlantic, Suwannee River and Gulf Railway Company; and, *whereas,* a portion of the said line of railroad herein provided for has already been built which will hereafter be conveyed and transferred into the said Atlantic, Suwannee River and Gulf Railway Company, therefore, *Be it further enacted,* That for each mile and part of a mile of railroad heretofore built and hereafter conveyed to the said Atlantic, Suwannee River and Gulf Railway Company, the corporation hereby enacted, it shall receive its ful quota of ten thousand acres of land from the swamp and overflowed lands granted to the State of Florida by

the Act of Congress passed September 28, 1850; which lands shall be conveyed to the company in the manner and under the conditions specified in Sections 9 and 10 of this Act."

The complainant exercised its option under section ten and took "floats" which it asserts might be located upon any unappropriated swamp and overflowed lands within the domain of the State.

Is the title to the act sufficiently broad to embrace such a grant?

As printed Chapter 4267 bears the title "An Act to Incorporate the Atlantic Suwannee River & Gulf Railway Company, to grant said corporation certain Privileges, and to aid the Construction thereof."

The journals of the two houses of the Legislature disclose, however, that the bill which was voted on by them bore at its passage the title merely, "A Bill to be entitled An Act to Incorporate the Atlantic, Suwannee River & Gulf Railroad Company," and was designated further as House Bill 99. The bill after its passage by the House appears by the Senate Journal to have been amended in that body and the House Journal shows affirmatively and specifically what that amendment was, and the concurrence by the House in the designated amendment. The bill by its short original title was referred to the joint committee on Enrolled Bills and subsequently there appears a report from this committee to the House that it finds correctly enrolled, not House Bill 99 nor a "bill to be entitled An Act to Incorporate the Atlantic, Suwannee River & Gulf Railroad Company," but "An Act to Incorporate the Atlantic, Suwannee River & Gulf Railway Company, to Grant said Corporation certain Privileges and to aid the Construction thereof;" which "act" was

signed by the speaker.  The Senate Journal  subsequent
to the passage of the House Bill 99 with the short title
is silent therein, unless, except and until the Joint Com-
mittee report the presentation to the Governor for his
signature of the "Act" with the changed and enlarged
title, and on the day thereafter the announcement by the
President that he was signing the "Act."

This court is firmly committed to the  holding  that
when the Journals speak they control,  and  as  against
such proof the enrolled bill is not  conclusive.  We  are
further committed to the proposition  that a  material
change in the title to a bill as signed by the presiding offi-
cers of the Legislature and as signed by the Governor is
fatal.  State *ex rel.* Attorney General v. Green, 36 Fla.
154, 18 South. Rep. 334, and cases cited.

Under such precedents the counsel  for the  appellee
were justified in conceding that they were bound by the
original title and contended only that the change was not
material and that the short title was sufficient to comply
with the constitutional command "each law enacted in
the legislature shall embrace but one subject and matter
properly connected therewith, which  subject  shall  be
briefly expressed in the title."

We need not consider whether the act embraces more
than one subject and matter properly connected  there-
with, but only whether the title is not too restrictive to
express this subject.  In other words, does the title "An
Act to Incorporate a Railroad Company" sufficiently ap-
prise the Legislature and the people that under such a
title a large land grant, hundreds of miles, perhaps, from
the proposed line of road will be included thereunder?

Two attempts are made to justify the title; one upon
authority of adjudged cases, the other upon an appeal to
contemporaneous history of legislative grants under simi-

lar titles, wherein it is asserted every one was put on notice.

First as to the adjudged cases cited by appellee. In State *ex rel.* McQuaid v. Commissioners of Duval County, 23 Fla. 483, 3 South. Rep. 193, we held that the title "An Act to Establish the Municipality of Jacksonville, provide for its government, and Prescribe its Jurisdiction" was sufficiently broad to enlarge its territorial limits so as to take in other municipalities adjacent thereto. Necessarily an act to establish a municipality may include therein the territorial limits of the town and this court held that the territory covered by the new charter was matter properly connected therewith. Cases are cited us from Georgia, Illinois, Kentucky, South Carolina, Virginia and West Virginia, all of which hold that the title to "incorporate a railroad" is sufficiently broad to permit thereunder counties and towns to subscribe for the stock or to issue bonds *therefor.* The Supreme Court of the United States in San Antonio v. Mehaffy, 96 U. S. 312, declared such a title sufficient under the Texas Constitution to bind the City of San Antonio for bonds voted and issued in pursuance of a provision of the act; this ruling, however, was subsequently repudiated by the Supreme Court of Texas in Peck v. City of San Antonio, 51 Texas 490. These citations are not controlling upon the point at issue before us, and the reasoning employed by the earlier ones shows clearly the distinction.

Apart from the generalities indulged in as to the necessity for caution to be exercised by the courts before setting aside or declining to make effective the action of a coordinate branch of the Government, the decisions are based upon the postulate that under the general subject or object of "incorporation" may be included as matter germane or connected therewith the person who may be-

come "incorporators" and in the absence of other constitutional restrictions the legislature may enlarge that class so as to permit certain persons or entities to enter upon the speculation, who have no such capacity under the general incorporation law.

The cases most in point that are brought to our attention are two from New York, both of which hold that the title to "incorporate" is too restrictive to permit a loan or grant from the State. People *ex rel.* v. Allen, 42 N. Y. 404, and People *ex rel.* Failing v. Commissioners of Highways, 53 Barb. (N. Y.) 70. These cases were cited approvingly by us in support of a declaration that a title to an act was too narrow in Webster v. Powell, 36 Fla. 703, text 718, 18 South. Rep. 441. See also Case v. Loftus, 43 Fed. Rep. 839.

Counsel for appellee disclaim any sinister purpose in those asking the charter and we freely accord them whatever benefit may come from good motives. The fact remains however, that the short title to which alone we look is so narrow and so innocent looking that neither the legislature nor the people of Florida were thereby put upon notice that hundreds of thousands of acres of the public domain were being granted away.

Under our constitution as amended bills may be read by their title only upon the first and second readings and must be read by sections only upon the final passage, and the journals almost never contain any part of the bill except its title and certain proferred amendments, nor do the newspapers as a rule publish more than the titles. It is of importance therefore that these titles be not misleading and lull into indifference the members of the legislature and the people of the State. With such a restriction in the constitution a legislator may excuse himself from a critical analysis of a bill upon which he is to

vote and it perhaps may be said that the legislative mind is not fully directed towards specific provisions of a bill but only to the general outline thereof as disclosed by the title.

The general rule to guide the courts in the consideration of questions of restrictive titles has been frequently announced by us. Carr v. Thomas, 18 Fla. 736; State *ex rel.* Gonzalez v. Palmes, 23 Fla. 620, 3 South. Rep. 171; Holton v. State, 28 Fla 303, 9 South. Rep. 716; State *ex rel.* Attorney General v. Green, 36 Fla. 154, 18 South. Rep. 334; County Commissioners of Duval County v. City of Jacksonville, 36 Fla. 196, 18 South. Rep. 339; Webster v. Powell, *supra;* State *ex rel.* Attorney General v. Burns, 38 Fla. 367, 21 South. Rep. 290; State *ex rel.* Attorney General v. Bryan, 50 Fla. 293, 39 South. Rep. 929. In the majority of the cases cited legislation has been stricken down as being without the purview of the title to the act. Even if the question were open under our decisions, upon principle and authority we would hold the title too narrow.

Appellee's appeal to contemporaneous history is of no avail. It is true that many charters were granted between 1883 and 1893 with similar titles, which upon examination disclose land grants of the Internal Improvement Fund, limited, however, to alternate sections within six miles of the line of the railroads. Should we admit the overpowering influence of such acts of the Legislature, could it go further than to give warning that a similar grant was being now conferred? It is boldly asserted that under Chapter 4267 the grant is to any overflowed lands undisposed of at the time of its passage, within the domain of the State and that no grant to any other railroad by the State has been so broad. Contemporaneous history then gave no notice that an entirely new field was

opened up for donations.  While it is true many charters were passed with these brief titles, it was by no means the universal practice and probably more, numerically, contained fuller titles, containing in  addition  to  the title before us, the words "to grant aid thereto," "to facilitate the construction of" and similar expressions.  It is further true as matter of contemporaneous  history  of which we may take judicial knowledge that many of these charters were obtained by "promoters" and  were  long since forfeited and while it is doubtless true that under similar titles the Trustees have conveyed lands, yet there is no adjudication by this court that tends in anywise to recognize the sufficiency of the title to such acts.

In doubtful cases we have yielded our judgment to administrative or legislative  construction and  in  other States the courts have apparently yielded their own judgments in matters less doubtful when to hold otherwise would amount to serious embarrassment to the administration of law and order.  The latter  is a  dangerous precedent when followed even in extreme cases and. has not obtained here, nor do we feel tempted by the seriousness of the situation to follow it now.  If harm is done the legislature is the forum for relief.

We are unwilling to assert that whenever a railroad asks for articles of incoproation that the people throughout the State are thereby put upon notice that hidden beneath so simple a request there lurks a  grant of  lands amounting to a principality, but affirm  that when  the railroad's only basis for equity is  founded upon  such esoteric grant the courts of this State will not aid them.

Applying then the rule recognized by this and all other courts whose opinions we have. examined upon the point of restrictive titles, we hold that the quoted sections nine,

42 S. C.

ten and eighteen of Chapter 4267 are not included within the title "An Act to incorporate the Atlantic, Suwannee River & Gulf Railroad Company" and are therefore ineffective and void.

It is but fair to the Circuit Judge who decided the cause below to state that it is probable that the point discussed by us was not properly and fully presented at the hearing before him.

It follows that the order overruling the demurrer to the bill must be reversed with directions that the demurrer be sustained and the bill dismissed. It is so ordered at the cost of the appellee.

SHACKLEFORD, C. J., TAYLOR, HOCKER and PARKHILL, JJ., and MALONE, Circuit Judge, concur.

WHITFIELD, J., disqualified.