# PETERS v. BROWARD.[1]

## APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF FLORIDA.

No. 49.   Argued November 8, 1911.—Decided January 9, 1912.

Under the law of Florida, as declared by its highest court, where there is a variance between the title of a bill as enrolled and promulgated and the title of the act as shown by the journals, the latter will control.

While the judgment of the highest court of the State in a case may not be *res judicata* of the case at bar, the parties and land affected not being the same, if in deciding it the court announces what the law of the State is and whether a particular statute was or was not validly enacted under the state constitution, this court will follow it as an authoritative announcement of the law of the State.

Whether a particular state law has been passed by the legislature in such manner as to become a valid law under the state constitution is a state and not a Federal question, and Federal courts must follow the adjudications of the state court.

Although the decision of the state court holding a particular law to be unconstitutional may not have been rendered until after rights based thereon had arisen, if the highest court simply followed a rule laid down before such rights had arisen, the decision in the later case is binding upon the Federal courts.

Where the state courts have held that the journals of the legislature can be examined to determine whether an act has been validly passed, it is the duty of one proposing to rely upon the act to examine the journals, and he cannot plead ignorance of the law as an excuse for not doing so.

This court cannot hold that an act is constitutional under the state law because the defect on which the state court declared it to be unconstitutional occurred through mistake, when the state court has passed on that question and held the act unconstitutional even under such condition.

Although the case may be a hard one, those who expend money on the faith of an invalid act cannot obtain redress from the courts but must apply to the legislature.

[1] Original docket title Peters v. Gilchrist.

An act of the State of Florida, incorporating a railroad company and
  granting it aid, having been held unconstitutional by the highest
  court of that State because the journal showed that it was an act to
  incorporate only, and only one subject can be embraced in one act,
  the Federal courts are bound to follow that decision, and to hold that
  Trustees of the Internal Improvement Fund had no power to con-
  vey land under that act, and that the grantees have no title to any
  of the lands claimed thereunder.

THE facts, which involve the title to land in Florida
under an act of the legislature of that State, are stated in
the opinion.

Mr. *John Stevens Maxwell*, with whom Mr. *Thomas F.
McGarry* was on the brief, for appellant:

In order to entitle the defendants to raise the question
here raised, a plea alleging matter, which. if appearing on
the face of the bill, would have been a good cause of de-
murrer, should have been resorted to, or the bill should
have been answered. *Griffing* v. *Gibb*, 2 Black,519.

Even if plaintiff's rights are to be determined entirely
by the validity, or invalidity of the act of May 24, 1893,
and the journals of the legislature are to control or furnish
the evidence of its title and the regularity of its enact-
ment, or otherwise, proof must be taken as to what con-
stitutes the journals and the entries required to be made
therein by the constitution of the State; and any errors,
or mistakes, may be shown in order to conform the
journals to the exact facts. *State* v. *Mason*, 9 So. Rep.
776, 787, 804; *Koehler* v. *Hill*, 14 N. W. Rep. 738,
742.

To overcome the presumption that the act was properly
enacted the contrary must be shown by clear and in-
disputable proof.

In those jurisdictions where resort may be had to the
legislative journals and where enrolled bills signed by the
presiding officers and governor are not conclusive when

it appears from the journals that some constitutional requirement was not observed, which was not required to be entered on the journal, it will be presumed that what was commanded. to be done was in fact done. 26 Am. & Eng. Ency. Law, 541; *State* v. *Hocker* (Fla.), 18 So. Rep. 767; *Field* v. *Clark*, 143 U. S. 649; *Potter* v. *Lainhart*, 33 So. Rep. 251, 257; Cooley, Const. Lim. 168.

It is competent for plaintiff to prove that the short abbreviated title to the bill was the result of a mistake or omission. *Walnut* v. *Wade*, 103 U. S. 683, 692.

The case is not *res judicata* because of the former ruling of the state court. The rule both in the Florida courts and the United States courts is that a judgment or decree upon demurrer is an adjudication only of the rights of the parties upon the allegations of the pleading demurred to, and will not preclude the assertion of the right under other material allegations not appearing in the former suit. *Gilman* v. *Rives*, 10 Pet. 301; *Gould* v. *E. & C. R. R. Co.*, 91 U. S. 526; *Wiggins Ferry Co.* v. *Ohio &c. R. R. Co.*, 142 U. S. 410; *Florida Southern Ry. Co.* v. *Brown*, 23 Florida, 104.

This court is not bound by the finding of the Supreme Court in the *Atlantic Lumber Company Case*, that the act was not in fact validly passed. *Morris* v. *Mason*, 9 So. Rep. 776; *Wilkes County* v. *Coler*, 180 U. S. 506, 520.

The journals cannot be held conclusive evidence of the title of the bill as introduced, without denying the opportunity of showing the real facts, which amounts to deprivation of property without due process of law. The rule is the same as that as to tax titles. Cooley on Taxation, 356. See also Black on Tax Titles, § 253; *Kelly* v. *Herrall*, 20 Fed. Rep. 895; *Abbott* v. *Lindenbower*, 42 Missouri, 162; *Bannon* v. *Burnes*, 39 Fed. Rep. 895; *Ewart* v. *Davis*, 76 Missouri, 356; *McReady* v. *Sexton*, 29 Iowa, 356.

The defendants' attitude is this: An act of the legisla-

ture in form and title complying with all legal requirements was introduced and validly enacted into law; it was accepted by all parties as valid and hundreds of thousands of dollars were expended under it by the predecessors in interest of the plaintiff and thousands of acres of land were earned by them under it, and certificates given them of this fact. Yet because the confessedly hasty, careless and inaccurate entries in the legislative journals, for convenience abbreviated the title of the act conferring these rights, it is conclusively presumed to be void and plaintiff's rights defeated, notwithstanding the actual existence of the rights and the long acquiescence therein of all parties in interest.

Such a ruling denies to this court as a court of equity the exercise of the wide and well established power which it possesses to correct mistakes and to adjudge rights of the parties as they really are. *State* v. *Jacksonville Terminal Co.*, 41 Florida, 363; *Hope* v. *Mayer*, 72 Georgia, 246; *Connor* v. *Green Pond R. R. Co.*, 23 So. Car. 427; *Schuyler County* v. *Rock Island R. R. Co.*, 25 Illinois, 181, 183; *Mahomet* v. *Quackenbush*, 117 U. S. 511; *Fireman's Association* v. *Loundsbury*, 21 Illinois, 511; *People* v. *Mahany*, 13 Michigan, 481; Cooley on Const. Lim. 205.

It would have been unnecessary to make the title broader than the actual title, and the other provisions are surplusage. But their presence does not invalidate the act, as they relate to matters germane to the object of the act. *State* v. *Jacksonville Terminal Co.*, 41 Florida, 363; *State* v *Arnold*, 140 Indiana, 628.

A liberal rule of construction should be applied when the constitutionality of legislative enactments is questioned, and every reasonable doubt should be resolved in favor of the constitutionality of the act. *Holton* v. *State*, 28 Florida, 308; *Duval County* v. *Jacksonville*, 36 Florida, 196; *State* v. *Hocker*, 36 Florida, 358.

Only such legislative acts should be overthrown as are

clearly and obviously offensive to their spirit and meaning. See cases *supra.*

The State and trustees are equitably estopped, under the circumstances set out in the bill, and admitted by the demurrers. They will not now be permitted to set up the unconstitutionality of the act. And the Federal courts will exercise their own independent judgment upon the subject. *Pleasant Township Co.* v. *Ætna Life Ins. Co.,* 138 U. S. 67, 72; *Burgess* v. *Seligman,* 107 U. S. 20, 23.

Where there had been no decision at all of a state court as to the constitutionality of an act before rights had been acquired thereunder, the Federal court will exercise its own independent judgment as to the validity and obligations of contracts made under the act before the state court held it unconstitutional. *Anderson* v. *Santa Anna,* 116 U. S. 356, 362.

. *Mr. William S. Jennings* and *Mr. William A. Blount,* with whom *Mr. A. C. Blount, Jr.,* was on the brief, for appellees.

MR. JUSTICE LURTON delivered the opinion of the court.

The complainant, Richard G. Peters, through mesne conveyances, asserts an equitable title to some two hundred thousand acres of swamp or overflowed lands in the State of Florida, being a part of the congressional grant of September 28, 1850, to the State of Florida. By state legislation the title to the lands so granted was vested in the Governor of the State and four other state officials and their successors in office, as trustees, for the purposes set forth in an act of June 6, 1855, entitled "An act to provide for and encourage a liberal system of internal improvement in this State."

The title asserted is based upon a grant in aid of the

construction of a railroad, found in a legislative act of May 24, 1893, printed in the session laws of Florida for 1893 (Ch. 4267, No. 153, p. 223). That act purports to incorporate the Atlantic, Suwanee River and Gulf Railway Company, and authorizes it to construct, and operate a railway between certain points within the State. The ninth and tenth sections read as follows:

"Sec. 9. That the State of Florida, for the purpose of aiding the construction of said railroad, its branches and extensions, hereby grants unto said company ten thousand acres of land for each mile of railroad it may construct, of the lands granted to the State of Florida, under the Act of Congress of September 28th, 1850, and which are commonly known as the swamp and overflowed lands; said lands to be deeded to the said company by the Trustees of the Internal Improvement Fund, as fast as each five miles of said road or any of its branches are graded, crosstied and rails laid thereon.

"Sec. 10. That upon the filing of a certificate of the completion of any five miles of said road or any of its branches, signed by the engineer and president of the said company, it shall be the duty of the Trustees of the Internal Improvement Fund to require the State Engineer or some other competent person to examine and inspect each five miles of road so completed; and on such person's or the State Engineer's report that the five miles are completed as certified, it shall be the duty of the Trustees of the Internal Improvement Fund to issue deeds to the said corporation, as required in the foregoing section; *Provided*, That the said corporation, its successors and assigns, shall have the privilege of requiring and having from the Trustees of the Internal Improvement Fund a certificate authorizing and entitling it to locate the lands which it may at any time have earned and become entitled to as aforesaid; and whenever and as often as the said corporation shall file with the Trustees of the Internal Improve-

ment Fund a plot and survey of the lands located by it in pursuance of a certificate given it by the Trustees as herein provided, the said Trustees shall set apart and upon demand execute unto said corporation, its successors or assigns, a deed conveying unto it the lands described in said plot and survey, from the swamp and overflowed lands granted to the State of Florida by the Act of Congress of September 28, 1850; *Provided,* That nothing in this Act contained shall make the State of Florida liable by reason of any deficiency there may exist in the public lands belonging to the State under and by virtue of the Act of Congress of September 28, 1850."

By the eighteenth section of said act it was provided that the railway company should receive the same quota of land on account of the construction of any part of the projected line by the Atlantic, Suwanee River and Gulf *Railroad* Company, theretofore incorporated for the same general purpose, upon receiving a conveyance of such constructed railroad.

The bill avers that the said railway company constructed twenty miles of railway, including about five miles conveyed to it by the predecessor company above referred to, which had been inspected and certified to the Trustees of the Internal Improvement Fund by the state engineer, and that the company, in the exercise of the privileges conferred by the tenth section of the act, had demanded and received from said trustees certificates "authorizing and entitling it to locate lands" so earned, and to receive from the said trustees a deed conveying to it, its successors or assigns, the lands so located. It is then averred that the certificates, together with survey and map of locations had been regularly filed with the trustees, and a deed demanded, but that the trustees refused to make such deed and later conveyed the lands so located, or the greater part thereof, to the defendant Neil G. Wade, who had full notice of appellant's title, and who

subsequently conveyed the same to the defendant the Southern Timber and Naval Stores Company, who, it is alleged, also had full notice of the prior right of the said Atlantic, Suwanee River and Gulf Railway Company, and its assigns, including the present complainant.

The prayer of the bill is that the Southern Timber and Naval Stores Company be adjudged to hold same in trust for complainant and required to convey same to him. In the alternative, the bill asks a decree against the Trustees of the Internal Improvement Fund for the value of said lands, or for the money received by the trustees for said lands, and for general relief.

The bill was dismissed upon demurrer.

It is evident from the facts stated that the origin and foundation of the title asserted by the bill to the state lands now held by the Southern Timber and Naval Stores Company is the land grant made or proposed in the Florida act of May 24, 1893. But that act, in another litigation between different parties, was held null and void in so far as its land grant clauses are concerned. *Wade* v. *Atlantic Lumber Co.*, 51 Florida, 628. The ground of this holding was that the title of the act, as shown by the journals of the two houses, was not broad enough to include a grant of public lands. The constitution of the State includes a provision against more than one subject in the same bill, that subject to be indicated by the title. Thus, the sixteenth section of Article III of the Florida constitution reads as follows:

"Each law enacted in the Legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title."

The title of the act in question, as it is found in the published Session Acts of 1893, is as follows:

"An act to Incorporate the Atlantic, Suwanee River and Gulf Railway Company, *to Grant Said Corporation certain Privileges and to Aid the Construction thereof.*"

The title, as shown by the journals of both houses, was in these words:

"A bill to be entitled an act to incorporate the Atlantic, Suwanee River & Gulf Railway Company."

Thus, the title, as shown by the journals, gives no notice that the bill grants public lands as an aid to construction, but purports to be no more than an incorporating act, while the act, as officially promulgated, bears a title expressing its contents.

But when there is a variance between the title of a bill as enrolled and promulgated and the title of the act as shown by the journals, the latter will control under the express decision of the highest court of the State of Florida. *Wade* v. *Atlantic Lumber Co.*, 51 Florida, 628.

In that case the Atlantic Lumber Company asserted title to certain swamp lands located under certificates issued to the Atlantic, Suwanee River and Gulf Railway Company, by authority of this act of May 24, 1893, which lands had been deeded to the defendant Neil G. Wade by the Trustees of the Internal Improvement Fund. The defendant Wade demurred to the bill upon the ground that the act of May 24, 1893, the sole source of the superior title asserted by the Atlantic Lumber Company, was invalid in so far as it included a land grant, because the title of the act did not express that purpose of the bill.

The Florida court took judicial notice of the journals of the Florida legislature, and finding the journal title to be as set out above, held the title of the act insufficient under the constitution to embrace a grant of public lands in aid of the company incorporated.

We shall pass by the suggestion that the judgment in the case referred to is an adjudication binding upon the parties to this suit as to the title or equities here in litigation, it not sufficiently appearing that the parties or the lands in suit are the same. Neither shall we stop to consider the effect of that decision and opinion as absolutely

determining the invalidity of the act of May 24, 1893, as against parties not then before the court. It is enough for the purposes of this case that we shall hold that case to be an authoritative announcement of the law of Florida in these respects: first, that under the constitution of that State an act entitled an act to incorporate a particular railway company does not bear a title sufficiently broad to embrace a grant of public land in aid of the construction of the authorized railway; and, second, that when the journals speak and show a variance between the journal title and the title of a bill as enrolled and promulgated, the journal title must control.

The question as to whether a particular law has been passed in such manner as to become a valid law under the constitution of the State is a state and not a Federal question. Courts of the United States are therefore under obligation to follow the adjudications of the courts of the State whose law is in question. *Town of South Ottawa* v. *Perkins,* 94 U. S. 260; *Leeper* v. *Texas,* 139 U. S. 462, 467; *Wilkes County* v. *Coler,* 180 U. S. 506.

The only authority which the Trustees of the Internal Improvement Fund had for the issuance of the certificates now held by the appellant, or for their location upon the public land of the State, or the execution of a deed to the locator, proceeds from this act. If that enactment be invalid the trustees had no authority to issue such certificates, and no authority to make the deed which was demanded for lands located by means of such certificates. Yet this very enactment has been declared invalid by the highest court of the State upon an examination by that court of the journals of the legislature showing a variance between the title of the bill as enrolled and the title shown by the journal. It would be a most remarkable occurrence if now, upon the same journals, we should hold that the bill had a sufficient title and was a valid law.

It is true that the issues in the case of *Wade* v. *Atlantic*

*Lumber Company* were raised by demurrer. But the question of whether the enactment was a valid law is a judicial question. In the case of the *State of Florida* v. *Brown*, 20 Florida, 407, a case decided ten years before this act was passed, it was held that the courts would examine the journals of the legislature and would hold a law invalid if from such journals it appeared that the law in question had not been constitutionally enacted. See also *State ex rel.* v. *Green*, 36 Florida, 154. In view of the cases cited, we find the Florida court saying, in *Wade* v. *Atlantic Lumber Company*, that "this court is firmly committed to the holding that when the journals speak, they control."

The suggestion that the rights of the appellant, or his assignors, arose before the decision in *Wade* v. *Atlantic Lumber Company*, and that the case is therefore one in which this court should exercise an independent judgment under the authority of such cases as *Burgess* v. *Seligman*, 107 U. S. 20, is without merit.

The rule appealed to is not applicable, because the highest court of the State had, before the acquirement of any rights, laid down the rule that if the journals of the legislature should show that a law had not been validly enacted, the fact would be fatal. It was therefore incumbent upon persons proposing to rely upon the act of May 24, 1893, to examine the journals. Indulgence cannot be claimed because they did not know the law or did not make such examination. There is, therefore, no reason for declining to follow the case of *Wade* v. *Atlantic Lumber Company*. In *Ottawa* v. *Perkins*, cited above, Mr. Justice Bradley, speaking for this court upon a similar question, said (p. 268):

"But the law under consideration has been passed upon by the Supreme Court of Illinois, and held to be invalid. This ought to have been sufficient to have governed the action of the court below. In our judgment it was not necessary to have raised an issue on the subject, except

by demurrer to the declaration. This court is bound to
know the law without taking the advice of a jury on the
subject. When once it became the settled construction
of the constitution of Illinois that no act can be deemed
a valid law, unless, by the journals of the legislature, it
appears to have been regularly passed by both houses, it
became the duty of the courts to take judicial notice of the
journal entries in that regard. The courts of Illinois may
decline to take that trouble, unless parties bring the mat-
ter to their attention; but, on general principles, the
question as to the existence of a law is a judicial one, and
must be so regarded by the courts of the United States."

But appellants say that the bill alleges that the title of
the bill when introduced was that shown by the enrolled
bill, and that it retained that title throughout each legis-
lative stage, and that the other title endorsed on the bill
and spread upon the journals was one made through in-
advertence or mistake. They further say that the de-
murrer admits this to be true. But in point of law,
evidence of the facts stated would not help the matter.
The Florida court, in *Wade* v. *Atlantic Lumber Company*,
*supra*, denied a rehearing of the original case, sought for
the purpose of inducing a modification of the opinion and
decree to enable the complainant Wade to show the very
facts now averred in the present bill. To this that court
said (51 Florida, 639):

"The appellee also asks that the decree be modified to
enable the petitioner to show that the title to the bill as
actually introduced into the House and at all subsequent
stages was in the form as now published, and that the
fact of the shorter form appearing in the Journals was due
to the mistake or carelessness of the clerks. To grant
this request would be to permit uncertain parol evidence
to countervail the legislative journals and would produce
overwhelming uncertainty as to the validity, force or
effect of every law upon the statute books; if admitted

for the purpose of sustaining an act, it would be equally admissible to overthrow an act and cannot be permitted."

We need not deal with the argument that the grant operated to pass the title to the lands located without more, since the invalidity of the act disposes of every right which might otherwise proceed from it.

Neither does the bill state any facts which authorize us to hold that the Trustees of the Internal Improvement Fund made any contract in reference to granting aid in the construction of the Atlantic, Suwanee River and Gulf Railway by virtue of their general power under the act of September 28, 1850, vesting title to the state swamp lands in them. Every act averred to have been done by them was but a step in pursuance of the power which was sought to be conferred by the act of May 24, 1893. Their subsequent conveyance of the lands upon which the certificates issued by them to the railway company was in pursuance of a sale made by them to Neil G. Wade, and their refusal to make a deed of the same lands to the railway company, or its assigns, was based upon the invalidity of the enactment under which such deed was claimed. They incurred, neither personally nor officially, any responsibility for their conduct in the matter.

The case of the railway company and their assigns is a hard one. They went forward under an enactment which was invalid, and have made large expenditures upon the faith of a law which they assumed was valid. But the consequences are not remediable save by an appeal to the legislative power. The proceeds of the sale of the lands located under the void certificates to Wade are not charged with any lien or equity by any of the facts stated in the bill.

The decree of the Circuit Court must be in all things

*Affirmed.*