HENRY DISSTON, et al., Appellants, v. THE BOARD OF TRUSTEES OF THE INTERNAL IMPROVEMENT FUND OF THE STATE OF FLORIDA, et al., Appellees.

Opinion filed May 7, 1918.

Petition for rehearing denied June 20, 1918.

1. The provision in Article III, Section 16, of the Constitution in relation to what shall be expressed in the title of a bill is mandatory, and should be strictly construed in all cases within the mischiefs intended to be arrested.

2. A contract entered into for the purpose of carrying out the provisions of a void enactment of the legislature can not be the basis of a trust agreement.

3. The title "AN ACT to Enlarge and Extend the Franchises of St. Cloud Sugar Belt Railway Company," is not sufficiently broad to carry a grant of 3840 acres per mile of the public

lands of the State, and there is nothing in this title to apprise the legislature and the people that the Act contained a land grant different from that provided for by the Act of 1879, and such grant, not being within the subject expressed in the title, is void.

Appeal from Circuit Court for Leon County, E. C. Love, Judge.

Judgment affirmed.

*Arthur F. Odlin, N. B. K. Pettingill* and *T. M. Shackleford, Sr.,* for Appellants;

*T. F. West,* Attorney General, *Glenn Terrell, E. J. L'Engle, W. W. Dewhurst, W. S. Jennings, S. B. Jennings* and *B. Franklin Brass.,* for Appellees.

BROWNE, C. J.—Henry Disston and others who claim 59,136 acres of the public lands of Florida, by virtue of conveyances from the St. Cloud Sugar Belt Railway Company, brought suit in equity to require the Board of Trustees of the Internal Improvement Fund to convey such acreage of lands to them. Demurrers to the bill were sustained, the bill dismissed and the complainants appealed.

The appellants claim that their predecessors in title derived their right to the lands through two sources, one by virtue of Chapter 3996 Laws of Florida, act of May 31, 1889, and the other by virtue of a letter from the Atlantic and Gulf Coast Canal and Okeechobee Land Company to the Board of Trustees of the Internal Improvement Fund and resolutions of the Board in relation thereto, which they claim created a trust in favor of the St. Cloud Sugar Belt Railway Company.

In the discussion of the sources of appellant's claim, the essential facts with regard to each will appear, and it would not be helpful to set the bill out in full or attempt to give a synopsis of it.

The bill alleges that the St. Cloud Sugar Belt Railway Company was organized and incorporated in September 1888 under the general law for the incorporation of railroads and canals, "whereby there was granted to any railroad company incorporated under the law the alternate sections within six miles on each side of such lines of railroad as might be constructed in accordance with plans and specifications agreed upon between said Board of Trustees and the Directors of such railroad company, with the privilege of making up any deficiency in quantity of such lands from the like alternate sections within twenty miles of such lines."

On the 31st of May, 1889 the legislature passed an act (Chapter 3996 Laws of Florida) entitled "An Act to enlarge and extend the franchises of St. Cloud Sugar Belt Railway Company." Section 5 of the act is in part as follows: "That to aid in the construction of said road, the State of Florida hereby grants to this company thirty-eight hundred and forty acres per mile of the lands granted to the State of Florida by the United States under Act of Congress of September 28th, 1850, to be taken from alternate sections lying on each side within six miles of the line of said railway; Provided, Said company shall comply with the provisions of the act entitled an act to provide for and encourage a liberal system of internal improvements in this State, approved January 6th, 1855, and the amendments thereto, as to the manner of constructing said railroad. That any deficiency of such lands lying along and within the distance aforesaid of the said line of railroad, held by

the State of Florida, to make up the number of acres included in the above grant to the said company shall be taken from any lands owned by the State or that may hereafter accrue to the State of Florida, and which are not appropriated to other existing corporations."

The first part of this section is a reiteration of the general land grant to railroads constructed in Florida, provided for by the amendment in 1879, of Sec. 26 of the Act of 1874, which is not necessary to set out here. The record does not disclose whether at the time of the passage of the act of 1889 there were any public lands which this railroad could receive under the general land grant acts, but two years thereafter, and before any lands had been alloted to the railway company, the Commisisoner of Agriculture reported to the Trustees of the Internal Improvement Fund, that there were no unappropriated lands within six miles of the portion of the railway which had been completed at that time. This condition was no doubt known to the legislature when the act of 1889 was passed, the purpose of which among others, was to grant to the railroad the quota of lands to which it would have been entitled under the general land grant acts, if there had been any available for that purpose, and section 5 of Chapter 3996 contains a full and complete land grant to the St. Cloud Sugar Belt Railway Company. As there were no lands within the area designated in the general land grant in the act of 1879, the railway could receive none except by another legislative grant.

It is argued by the appellant that the grant contained in sections 5 and 6 of the act is not a new or additional land grant but merely an extension of the limits within which it could obtain its lands. We cannot accept that contention. The railroad incorporation act of 1879

under which the St. Cloud Sugar Belt Railway Company was incorporated, entitled it to lands within a certain designated area and beyond that area it had no right or claim to any lands whatsoever. If there were no lands within the designated area, the Board of Trustees of the Internal Improvement Fund could not convey any to them without legislative authority. This authority the act of 1889 sought to give.

It cannot be successfully contended that the Act of 1889 merely confirmed a prior legislative grant. The lands granted by the Act of 1879 were contained within well designated areas, and if there were no lands in such areas, the legislative grant was ineffective for want of anything for it to be operative upon. It being quite clear that the Act of 1889 sought to make a grant of lands to the St. Cloud Sugar Belt Railway Company not theretofore provided for or authorized by law, the question for us to determine is whether the legislature exercised its power in this respect in accordance with or in violation of the constitution? After very careful consideration we are satisfied that the title of this act is not sufficiently broad to embrace such a grant, and in that respect it is violative of Article III, Section 16 of our constitution, which provides that "Each law enacted in the legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title."

It is well settled in this State that this provision of the constitution is mandatory and should be strictly construed in all cases coming within the mischiefs intended by it to be arrested. State ex rel. Attorney General v. Burns, 38 Fla. 367, 21 South. Rep. 290.

In the case of Wade v. Atlantic Lumber Co., 51 Fla. 628, 41 South. Rep. 72, the same question as is here

involved, is discussed by Mr. Justice COCKRELL and we fully agree with the views expressed and conclusion reached in that case, which we think are convincing. The title of the act in the Wade case was, "An Act to Incorporate the Atlantic, Suwanee River and Gulf Railway," and the title of the act that we are considering is "to Enlarge and Extend the Franchise of the St. Cloud Sugar Belt Railway Company." The former gave certain franchises, the latter enlarged and extended them. An act incorporating a railway whereby it is granted certain franchises is so close in meaning and purpose to one which enlarges and extends them as to make the two almost identical. The purpose of the constitutional provision which requires the subject of a law to be briefly expressed in the title, is to apprise the legislature and the people in a general way of the purposes of the Act. This the title did not do, and no one reading it would for a moment suppose that it contained this large grant of the public lands of Florida.

It is strongly argued by the appellant, that if we hold that the Act of 1889 contained an additional land grant, and was not a mere extension of the general land grant contained in the Act of 1879, that the title is sufficiently broad to cover an additional grant, because as the St. Cloud Sugar Belt Railway Company had a charter or franchise "including the *right to acquire* land from the State," that an act to "enlarge and extend its franchises" would reasonably include an enlargement of its right to acquire such land as one of its franchises.

The right of a railroad corporation to "acquire land from the State" by purchase, may flow from its franchise, but we take it that counsel does not mean this, but rather the "right to acquire land from the State" as a grant in aid of its construction as provided for in

the act of 1879. The right to acquire lands from the State by purchase, is a different right from that of a railroad to receive from the State a grant of lands in aid of its construction. The one may flow from its franchise, the other can only be derived from a legislative grant. The franchise of the St. Cloud Sugar Belt Railway, carried with it no right to acquire any of the public lands of Florida not derived from the Act of 1879, and as to that, its right was restricted within a definitely described area. As its franchise gave it no right to acquire any of the public lands of Florida independent of the Act of 1879, it follows that the enlarging and extending of its franchise in no wise enlarged and extended its right to receive any of the public lands of Florida as a grant from the State.

We must therefore regard the grant contained in the Act of 1889 as a separate grant independent of its franchise, and of its rights under the Act of 1879.

There is nothing in the words "An Act to Enlarge and Extend the Franchises of the St. Cloud Sugar Belt Railway Company," which comprise the title of Chapter 3996 Acts of 1889 now under consideration, to indicate that 59,136 acres of the public lands of Florida were being granted away. The title is restricted to its "franchises" and this court said in the case of Gibbs v. Drew, 16 Fla. 147, that the franchises of a railroad "are incorporeal hereditaments as contradistinguished from 'land' which is a corporeal hereditaments." We think it unnecessary to extend the discussion upon this point, and we hold that the part of Chapter 3996 of the Act of May 31st, 1889 upon which the St. Cloud Sugar Belt Railway Company bases its claim to any of the public lands of Florida is inoperative and void. Carr v. Thomas, *et al.*, 18 Fla. 736; S. F. & W. Ry. Co. v. Geiger,

21 Fla. 669; State *ex rel.* Gonzales v. Palmer, 23 Fla. 620; *Ex Parte* Knight and Knight, 52 Fla. 144; Peters v. Broward, 222 U. S. 483.

We will now consider the letter from the Atlantic and Gulf Coast Canal and Okeechobee Land Company to the Board of Trustees of the Internal Improvement Fund, and the Resolution of the Board adopted June 22nd, 1891, out of which appellants contend grew the trust which they ask the court to require the Trustees to execute.

The following is an extract from the minutes of this meeting: "Mr. T. S. Tutwiler, Superintendent of the St. Cloud Sugar Belt Railway Company, accompanied by Fred T. Myers, Esq., Attorney, appeared before the Board and asked the Trustees to convey to said Company the quantity of lands to which it is entitled for the construction of the 15.4 miles of its railway recently inspected and favorably reported on by the State Engineer; and as the Commissioner of Agriculture has reported that there are no lands within six miles of said railway which said Company can get under its grant they presented the following communication from Hamilton Disston, President of the Atlantic and Gulf Coast Canal and Okeechobee Land Company, to the Board, viz:

'Philadelphia, Penna., April 24th, 1891.
To the Trustees of the Internal Improvement Fund of the State of Florida:

Gentlemen: In order to aid the St. Cloud Sugar Belt Railway Company by enabling them to obtain some lands under their franchise and encourage the further extension of their railway, this Company is willing and does hereby release so much of the lands now reserved to them under their drainage contract in the following:

| Township, south | Range, east |
|---|---|
| 42 | 37, 38 |
| 43 | 37, 38, 39 |
| 44 | 40 |

as your Honorable Board may convey to the St. Cloud Sugar Belt Railway Company on account of lands that may be due them on railway now constructed.

Yours respectfully,

Hamilton Disston,

President.'

"Whereupon the following resolution was adopted by the Board:

'Whereas the St. Cloud Sugar Belt Railway Company has completed 15.4 miles of its road, and is, under its charter, entitled to 3840 acres of the lands granted to the State of Florida under the Act of Congress of September 28th, 1850, for each mile of road it constructs, such lands to be taken ffrom the alternate sections within six miles of its line of road, and in case of a deficiency of such lands within the distance aforesaid, then to be taken from any such lands owned by the State not appropriated to other existing corporations.

*And Whereas,* the Commisisoner of Agriculture has reported that there are no unappropriated lands of the class designated within six miles of the portion of said Company's railway which has been constructed; and whereas the Atlantic and Gulf Coast Canal and Okeechobee Land Company has filed with the Board written authority for them to convey to the said St. Cloud Sugar Belt Railway Company the lands now reserved for said Land Company under its drainage contract with the Board and to which it will be entitled under said drainage contract, in the following townships, to-wit:

| Township, south | Range, east |
|---|---|
| 42 | 37, 38 |
| 43 | 37, 38, 39 |
| 44 | 40 |

Now therefore be it

*Resolved* by this Board that they will, under the authority aforesaid, convey to said St. Cloud Sugar Belt Railway Company the quantity of lands to which it is now entitled, to be taken from the odd-numbered sections in the townships aforesaid as soon as patents are obtained from the United States for the State selections in said townships.' "

By virtue of this letter and Resolution the appellants claim that a trust was established with the Board as Trustee, and the Railway Company as *cestui que trust,* which this court should require the former to discharge, and that the trust exists independently of the land grant contained in the Act of 1889. If this were so, a more complex question would arise. But it seems clear to us that the letter from the Canal Company and the Board's Resolution are both predicated upon the claim of the railroad to the land granted by the Act of 1889. The letter from the Canal Company to the Board releases certain lands in townships 42, 43 and 44, "as your Honorable Board may convey to the St. Cloud Sugar Belt Railway Company on account of lands that may be due them on railway now constructed." But there were no lands due the railway company from the State except by virtue of the grant of the Act of 1889. The legislature by the Act of 1879 designated certain lands to be given to railroads and canals constructed in the State, and as the St. Cloud Sugar Belt Railway was constructed in a part of the State where there were no unappropriated lands of the class designated in the act, the letter from

the canal company must have referred to lands that were supposed to be due the railway company under the Act of 1889. If there were no lands within the designated area which could be granted to the railroad, there were no lands due it, except under the Act of 1889, if the grant therein was valid.

If, however, there is any question about what was meant by the expression in the letter, "lands that may be due them," the Resolution of the Board clearly shows that they had in mind the grant contained in the Act of 1889, and not the general land grant in the Act of 1879. This Act provided that when there was an insufficiency of swamp and overflowed lands lying on either side of a line of a railroad or canal for a distance of six miles, from which the Trustees could concey to the railway or canal company the alternate sections, that "the deficit should be located elsewhere, *and within twenty miles of the railroad or canal.*"

The preamble to the Resolution recites that "Whereas the St. Cloud Sugar Belt Railway Company has completed 15.4 miles of its road, and is, under its charter, entitled to 3840 acres of the lands granted to the State of Florida under the Act of Congress of September 28th, 1850, for each mile of road it constructs, such lands to be taken from the alternate sections within six miles of its line of road, and in case of a deficiency of such lands within the distance aforesaid, then to *be taken from any such lands owned by the State* not appropriated to other existing corporations." The last sentence is in the exact words of the grant in the Act of 1889, which provided that the deficiency should *be, "taken from any such lands owned by the State,"* as contradistinguished from the wording in the Act of 1879, 'that 'the deficiency

"shall be located within twenty miles of the line of the railroad."

It is quite clear that the canal company when it wrote its letter to the Trustees releasing certain lands reserved to them so that they could be conveyed to the railway company on account of lands that may be due them, and the Board when it adopted the Resolution, were acting under the supposed authority of Section 5 Chapter 3996 of the Act of 1889.

No contract entered into for the purpose of carrying out the spirit of a void enactment of the legislature, can be the basis of a trust agreement, and as the land grant in Chapter 3996, is inoperative and void for the reason heretofore stated in this opinion, it follows that the trust sought to be established by the action of the Board of Trustees at its meeting on the 22nd day of June, 1891, has no binding force, because it endeavors to carry into effect void provisions of a legislative act.

Having reached the conclusion that the land grant contained in Chapter 3996 in the Act of 1889, is inoperative and void, and that no valid trust was established by the release of the canal company and the Resolution of the Board of Trustees, there is no necessity for the court to decide all the questions raised by the appellants, on the demurrers to the bill. It is sufficient to say that as they are not entitled to any lands from either source under which they claim, there is no equity in the bill, and the demurrers were properly sustained by the Chancellor upon the ground.

The judgment is affirmed.

TAYLOR AND WHITFIELD, J. J., and Branning and Campbell, Circuit Judges, concur.

ELLIS AND WEST, J. J., disqualified.