T. K. Apgar, *Appellant*, v. W. P. Wilkinson, G. A. Tyler, W. C. Jackson, W. H. McBride, C. B. Jones, as the Board of County Commissioners of Volusia County, Florida; S. D. Jordan, as Ex-officio Clerk of the Board of County Commissioners of Volusia County, Florida; G. A. Davis, Volusia County, and James Peterson Construction Company, a Corporation, *Appellees.*

En Banc.

Opinion Filed March 13, 1928.

*Giles & Gurney, L'Engle* and *Shands,* for Appellant;

*W. M. Toomer, Scarlett, Jordan, Futch & Fielding,* and *Murray Sams,* for Appellees.

TERRELL, J.—April 14th, 1927, the appellees as members of the Board of County Commissioners of Volusia County, Florida, entered into contract with appellant to construct a court house at DeLand on a certain lot owned by the said County of Volusia. On May 6, 1927, appellant, T. K. Apgar, on approval of said Board of County Commissioners assigned and set over all his interest in said contract of April 14th to James Peterson Construction Company, a corporation, and on May 10, 1927, said James Peterson Construction Company began the performance of the said contract. On June 3rd, 1927, after James Peterson Construction Company had expended large sums for labor and material toward the execution of said contract, the Legis-

lature of Florida at i's regular session in 1927 enacted House Bill No. 1694, the pertinent part of which is as follows:

"An Act Providing that the County Commissioners of Volusia County, Florida, shall Purchase for Volusia County, Florida, Certain Additional Land, and Providing the Manner of Use Thereof, for Court House Purposes, and Providing the Manner of Payment for said Land.

*Be It Enacted by the Legislature of the State of Florida:*

"Section 1. That the County Commissioners of Volusia County are hereby authorized and required to purchase, as soon as practical, the East seventy-two (72) feet of Lot four (4), Block three (3) Rogers DeLand, for Court House purposes and to cause the Court House, now contracted to be built, to be constructed in the approximate center of the present Court House site and the land to be acquired under the provisions of this Act. Provided, however, that said land shall not be acquired at a cost to exceed sixty-five thousand dollars ($65,000.00).

"Sec. 2. That the County Commissioners of Volusia County, Florida, are hereby authorized and empowered to pay for said property, in whole or in part, out of any surplus funds available for general purposes and shall issue a promissory note or notes for the payment of the whole or such portion of the purchase price of said property as there shall not be funds otherwise available to effect said purchase. Said promissory note or notes shall bear interest not to exceed six per cent per annum.

"Sec. 3. That said promissory note or notes shall be general obligations of the County of Volusia, State of Florida.

"Sec. 4. That said County Commissioners are authorized and required to levy such special tax for the payment of said promissory note or notes, together with interest, as shall be necessary to pay off the said promissory note or notes together with interest in such time as shall seem advisable to the said Board of County Commissioners, provided that said note or notes shall be paid off in not to exceed five years.''

The lands referred to in said Act were adjoining and contiguous to those on which the court house was contracted to be constructed. On July 12, 1927, appellees as members of the Board of County Commissioners of Volusia County adopted a resolution providing for the purchase of the lands described in said Act (House Bill No. 1694) pursuant to the terms thereof and notified James Peterson Construction Company to discontinue work under its contract for the construction of said court house pending such purchase. On July 25th, 1927, appellant filed his bill of complaint in the Circuit Court of Volusia County seeking to have the said Act of the legislature (House Bill No. 1694) declared null and void and to restrain the appellees as members of the Board of County Commissioners of said county or any one by or through them from recognizing or attempting to carry out the terms of the said Act. A temporary restaining order was granted without notice on the date the bill was filed. A motion to dissolve the said temporary restraining order was granted by Judge J. C. B. Koonce, *pro hac vice* August 26, 1927, from which last named order appeal was taken to this Court.

It is first contended that House Bill No. 1694 is void and ineffective because the facts conclusively show that it was enacted without notice of intention to apply therefor being published for sixty days prior to its introduction in

the legislature as required by Section 21 of· Article III of the Constitution.

The rule is well settled in this State that when local bills, such as are covered by Section 21 of Article III of the Constitution, are introduced in the legislature it is a legislative function and duty to ascertain and determine whether the required notice by publication has been given and that the courts will presume that legal evidence of such publication was duly established in the legislature. Stockton v. Powell, 29 Fla. 1, 10 So. 688; Rushton v. State, 58 Fla. 94, 50 So. 486; Vann v. State, 65 Fla.. 160, 61 So. 323; State v. Fcarnside, 87 Fla. 349, 100 So. 256, 258.

The facts on which appellant relies to show that the ·sixty-day notice of intention to apply therefor was not given as required by Section 21 of Article III of the Constitution are that the contract for the construction of the said court house was executed April 14, 1927, that House Bill No. 1694 refers to the court house ''now contracted to be built,'' and that said Act was passed and approved by the Governor June 3, 1927, there being only fifty days from the date of the said contract to the passage and approval of said Act. Supporting these facts appellant rests his contention on the decision of this Court in Horton v. Kyle, 81 Fla. 274, 88 So. 757.

In Horton v. Kyle this Court had under consideration an Act passed at the extraordinary session of ·the legislature in November, 1918. Only twenty-three days elapsed between the date of the proclamation of the Governor calling the legislature in extra session and the date of its adjournment. No proof was produced in the legislature that the required sixty-day notice was given and this Court held that under such circumstances it would not indulge the presumption that such notice was given. In the case at bar the assaulted Act was passed at a regular session of the legislature. It is true that it refers to the contract

for constructing the court house but this of itself does not preclude nor is it inconsistent with the fact that the sixty-day notice of the introduction and passage of House Bill No. 1694 may have been running prior to and at the time the contract was executed. In the face of the mandate of the Constitution and the fact that it was entirely possible that notice was being given at the time the contract was executed we would not be warranted under the facts here given in assuming that it was not legally given.

It is next contended that House Bill No. 1694 violates Section 16 of Article III of the Constitution in that its subject matter is not briefly expressed in the title.

The reason and purpose for requiring that the subject of every Act introduced in the legislature be briefly expressed in the title as is required in Section 16 of Article III of the Constitution has been often expounded by this Court. Webster v. Powell, 36 Fla. 703, 18 So. 441; State ex rel. v. Burns, 38 Fla. 367, 21 So. 290; Wade v. Atlantic Lumber Company, 51 Fla. 628, 41 So. 72; Disston v. Trustees of Internal Improvement Fund of State of Florida, 75 Fla. 653, 79 So. 295.

The subject matter of an Act may be as brief and restrictive in the title as the legislature may see fit to make it, provided the several matters expressed therein are germane to each other and are properly connected. *Ex Parte* Knight, 52 Fla. 144, 41 So. 786; Fine v. Moran, 74 Fla. 417, 77 So. 533.

The title to House Bill No. 1694 shows conclusively that the Act was designed to authorize the purchase of additional lands for Volusia County for court house purposes "providing the manner of use thereof" and "providing the manner of payment for said lands." We have examined the body of the Act carefully and we fail to find a single provision therein which may not reasonably be em-

braced within the subject expressed in the title, or matter properly connected therewith. The record discloses that the reason for the purchase of the East seventy-two feet of lot four, block three, as described in the Act was to secure better air and lighting facilities by removing the foundation to the westward far enough (32 feet) that the court house when completed would stand approximately in the center of the county property after the purchase, such purchase lying contiguous to the original holding. "Providing the manner of use thereof" as employed in the title was ample to put the public on notice and inquiry as to the disposition and use of said purchase as is outlined in said Act and as shown by the record to have been attempted by the appellees.

It is also contended that House Bill No. 1694 is invalid because it is not merely an authorization to the County Commissioners but is clearly mandatory on them.

The Constitution (Section 5 of Article VIII) among other things provides that the powers, duties and compensation of County Commissioners shall be prescribed by law. Section 1475, Revised General Statutes of Florida, in obedience to the fiat of the Constitution in general terms, defines the powers and duties of County Commissioners. There is nothing in the Constitution inhibiting the legislature from imposing mandatory duties on County Commissioners. However, our view of the force and effect of the words "required" and "shall" as used in the Act brought in question to define the duty imposed on the County Commissioners of Volusia County is that they constitute an authorization or clothing of the said County Commissioners with power and authority to do the things enumerated in the Act. We understand the general rule to be that where mandatory words or provisions are written in statutes defining the duties of administrative officers such words or provisions may be construed as direc-

tory only, unless something in the body of the Act is indicative of the contrary view.

Appellant cannot gainsay that the primary purpose of House Bill No. 1694 is to procure additional lands for court house purposes at DeLand, and the reasons therefor are good and sufficient. The erection of court houses and other public buildings and the acquirement of lands thereof is a county function peculiarly vested in the County Commissioners. The fact that the Act in question authorizes the County Commissioners to assess and collect taxes to pay for the lands purchased and prescribes their duties in this is a mere incident to its primary purpose and does not offend against the Constitution. Kroegal v. Whyte, 62 Fla. 527, 56 So. 498; McMullen v. Pinellas County, 90 Fla. 398, 106 So. 73; Lainhart v. Catts, 73 Fla. 735, 75 So. 47; Bannerman v. Catts, 80 Fla. 170, 85 So. 336; Berry v. Hardee, 83 Fla. 531, 91 So. 685.

The matter of authorizing the assessment and collection of taxes is a legislative prerogative and may be done as the legislature directs. A county or counties may be authorized by special or local law to levy and collect a tax for local county purpose. Section 5 of Article IX of the Constitution. Kroegal v. Whyte and McMullen v. Pinellas County, *supra*.

It is further contended that House Bill No. 1694 violates the obligation of the contract between Peterson Construction Company and the County Commissioners of Volusia County.

Appellant presents no facts to show that he is in position to raise this question. Peterson Construction Company is not here complaining and if it was, sufficient showing is not made to present a cause of action on this ground.

Other assignments of error have been examined but a discussion of them would serve no useful purpose. The

decree of the chancellor was therefore correct and is affirmed.

Affirmed.

ELLIS, C. J., AND WHITFIELD, STRUM, BROWN AND BUFORD, J. J., concur.

BROWN, J. (concurring):

It is not necessary in this case, as pointed out by the opinion, to determine whether, under Section 5 of Article IX of the Constitution, the legislature could compel County Commissioners to assess and impose taxes for a purely county purpose. The Act in question undoubtedly authorizes the levy, and if the word "require" be deemed to have been used in a compulsory sense, it may be ignored or omitted and yet leave the Act a valid and workable law, authorizing the expenditure and the imposition of taxes to pay for it.