**CHARLIE MAE JORDAN CHIAPETTA, v. WILLIAM P. JORDAN**

16 So. (2nd) 641                                              June Term, 1943
November 2, 1943                                                   En Banc
Rehearing Granted November 20, 1943

*Polhill & Simmons,* for petitioner.

*W. H. Wolfe* and *J. E. Satterfield,* for respondent.

SEBRING, J.:

Charlie Mae Jordan procured a final decree of divorce from her husband, William P. Jordan, on June 17, 1942. The decree awarded the custody of the minor child of the parties to Mrs. Jordan and required Mr. Jordan to pay a certain specified amount monthly to the mother for the support of the child. On February 5, 1943, the father of the child petitioned the trial court for change of custody of the child to him, alleging grounds therefor. In due course the mother answered the petition, denying the allegations of the petition and praying affirmatively that custody in her be continued and that she be allowed suit money and attorney's fees for defending the case made by the petition. On June 3, 1943, at final hearing the chancellor entered an order granting custody of the child to the father for the school term of each year and to the mother for the remaining period. The order also denied the mother's application for suit money and attorney's fees.

On August 23, 1943, Charlie Mae Jordan, who is now Charlie Mae Jordan Chiapetta, brought the order made by the trial court pertaining to custody of the child here for review. She has likewise filed in this court a petition alleging her indigency and praying that Jordan be reqiured to pay fee to her attorney for this appeal and to advance monies to pay for the costs of the transcript of the testimony taken below, so that such testimony may be before this court on appeal. The respondent, William P. Jordan, has filed a motion to strike the petition for allowance of attorney's fees and costs.

Prior to May 28, 1943, a divorced wife was not entitled to an allowance of attorney's fees, court costs and suit money in proceedings subsequent to a final decree of divorce, even on the husband's petition for the custody of minor children. Davis v. Davis, 143 Fla. 282, 196 So. 614. If the authority now exists to grant such allowances in such a proceeding it exists by virtue of Chapter 21881, Laws of Florida, 1943, which became law on May 28, 1943.

But it is contended by respondent in opposition to the petition, on grounds squarely raised in the motion to strike, that the act constitutes class legislation so lacking in uniformity as to all persons similarly situated as to be void.

The context of the material portions of Chapter 21881, Acts of Florida, 1943, is as follows:

"Section 1. Whenever, subsequent to the rendition of an absolute decree of divorce by any of the Courts of this State, either party thereafter in good faith prosecutes or defends further proceedings either in respect to the custody of the children of such divorced parties, or in respect to the enforcement of modification of alimony, provided for by such divorce decree, or any other matter arising as a direct result of such divorce decree, the court may, in the exercise of a sound judicial discretion allow to the divorced wife, or husband and order the divorced husband, or wife to pay such sums for suit money, including a reasonable attorney's fee, as from the circumstances of the parties and the nature of the case shall be fit, equitable and just."

"Section 3. This Act shall apply in all cases now pending or hereafter instituted in which the final decree of divorce was recorded prior to the effective date of this Act."

"Section 4. This Act shall become effective immediately upon becoming a law."

It will be noted from a reading of Section 3 of Chapter 21881 that the act applies only to those classes of cases arising out of divorce decrees where the final decree of divorce was recorded *prior* to the effective date of the act. The question is whether this classification adopted by the law-making body is so restrictive in its application as to render the act nugatory.

It is so well settled as to need no citation of authority that the Legislature may classify objects of legislation if the clasification is not clearly arbitrary and unreasonable, the test being that in such attempted classification all persons or things similarly situated under substantially like circumstances must be included therein. In other words, for such legislation to be valid the same means and methods must be applied impartially to all the constituents of a class so that the law shall operate equally and uniformly upon all persons in similar circumstances—the classification must be based upon some essential difference which bears a just and proper relation to the attempted classification, and is not a mere arbitrary selection.

It takes only a casual inspection of Section 3 to determine that the statute does not comport with this rule. There can be no reasonable basis for legislative distinction between those cases arising out of final decrees of divorce recorded before and those recorded after the effective date of the act. Patently, a classification based upon such attempted distinction is purely arbitrary. The act, therefore, must fall, unless, perchance, it can be saved by an elimination of Section 3 as being incidental and nonessential to the legislative scheme, thus leaving the act operative in its remaining portions. See 11 Am. Jur., Constitutional Law, Sections 150, 158, 159. We fear, however, that this may not be done, for it may not be said that Section 3 of the Act is immaterial, or incidental or subordinate matter not necessary to the act, or

that the Legislature would have enacted the remainder of the statute into law without the restrictive, modifying influence of the invalid section. Indeed, it is clear that the whole legislative scheme, as reflected in the act, is predicated upon the legislative intent that the act shall operate only in that narrow, restricted field of cases arising out of final decrees of divorce recorded prior to the effective date of the act, leaving those cases arising out of divorce decrees recorded subsequent to the act to be controlled, necessarily, by the law of this State as it existed prior to the passage of the act in question.

When legislative intent is made so manifestly clear it is without our province to hold that the act has a broader application and thus substitute judicial views for those of the Legislature so clearly expressed, even though by so doing we might be able to save a statute which attempts to operate in a field of law which has, for so long, needed such salutary legislation.

From the conclusions we have reached, it follows that the motion to strike the petition for an allowance of attorney's fees and costs in this court should be granted, and the petition denied.

It is so ordered.

BUFORD, C. J. BROWN and ADAMS, JJ., concur.

TERRELL, CHAPMAN and THOMAS, JJ., dissent.

ON REHEARING

THOMAS, J.:

By final decree appellant was granted a divorce from appellee and given the custody of their minor child for a major part of each year. Upon a later petition by appellee the provisions of the final decree relating to this custody were modified. This was July 15, 1943, and meanwhile the Legislature enacted Chapter 21881, Laws of Florida, Acts of 1943. F.S.A. Sec. 65.16 and note. The appellant filed here a petition for certiorari to review the order of modification and also petitioned this Court to grant her an allowance for counsel fees and costs.

We are concerned now only with the preliminary matter of the propriety of such an allotment, and to decide the point

we must determine the constitutionality of the act, for if it violates organic law the appellant is barred from this relief by former decisions of this Court, for example, Davis v. Davis, 143 Fla. 282, 196 So. 614.

In resisting the motion appellee contends that the title of the act is defective because it bore no notice of provisions relative to custody of children and indicated no purpose to make its contents retrospective. It was further challenged on the ground that it was so restrictive as to constitute class legislation.

As we strive for a correct conclusion we will ignore Sections 2 and 4, relating to enforcement of orders and the effective date of the act, and confine our discussion to those numbered 1 and 3. The first, abridged to eliminate parts of it inapplicable to facts here involved, provides that *"Whenever,* subsequent to the rendition of an absolute decree of divorce . . . either party *thereafter* . . . prosecutes or defends further proceedings . . . in respect to the custody of children . . . the Court may . . . allow to the divorced wife, or husband and order the divorced husband, or wife to pay such sums for suit money, including a reasonable attorney's fee, as . . . shall be . . . just.", (Italics furnished.)

The question of the restricted scope of the act may be attributed to the unfortunate language of Section 3: "This Act shall apply in all cases now pending or hereafter instituted in which the final decree of divorce was recorded prior to the effective date of this Act." In deciding it we must indulge the presumption that the law is constitutional and in treating of ambiguities and imperfections it must be our goal to save the law and preserve the intention of the Legislature if that may be done. Meanwhile in our consideration we are confined to the channels of construction long and often recognized.

Appellee contends that the third section, taken literally, provides the remedy *only* in those cases where the final decree has been recorded before the act became a law. Restricting its provisions in this manner would be the equivalent of inserting and adopting the word "only" as a part of the phraseology the Legislature chose. It seems to a majority of the

court that introduction of the word "also" would be more consistent and more in keeping with the design gleaned from the entire law. The extent of its provisions is indicated by the very first word of the law, "Whenever," which means "at whatever time," "no matter when," "at any or all times," and "in any or every instance in which." It is significant, too, that the word "thereafter" was also employed. Bearing in mind the broad meaning of the word "whenever" and the true definition of the word "thereafter" the context of the principal part of the law, Section 1, clearly conveys the thought that at any time in the future when a decree is granted and a party *after that* presents or defends against a petition he may secure the allowances. It is the appellee's position that despite this phraseology the court should give the third section the narrow construction which would confine such benefits to those divorce suits already concluded by the recording of the decree when the act passed.

If we give Section 3 this strict interpretation the result is remarkable. Quoting the section in the alternative it provides, first, "This Act shall apply in all cases now pending . . . in which the final decree of divorce was recorded prior to the effective date of this Act," and second, "This Act shall apply in all cases . . . hereafter insituted in which the final decree of divorce was recorded prior to the effective date of this Act." It is our view that the confusion has been largely caused by the definition attributed to the word "cases." If considered as meaning "suits for divorce" provision is made for the remedy in suits pending where a final decree has been entered. By the next reference it would apply in suits thereafter instituted in which a final decree had already been entered. Both provisions would, therefore, appear absurd. In casting about for the true intention of the Legislature it has become obvious to us that the word "cases" should be considered a synonym of "supplementary proceedings." If such a definition is adopted the contents of Section 3 become understandable, for they then simply provide that in proceedings of this character, pending or brought in the future, the benefits of the act will be available to all parties.

We have observed that the appellee claims a construction which is the equivalent of reading into this section the word

"only" to confine it to proceedings supplemental to divorce decrees already entered. By supplying the word "also" we would take no more liberty with the language used by the Legislature, and thus make the remedy available to parties in proceedings pending and to be brought regardless of the date of the entry of the final decree. We believe this to have been the purpose of the Legislature—to furnish this remedy, long needed in our jurisprudence.

We are particularly conscious of two principles of statutory construction followed by the authorities. Substance of one is that all parts of an act must be considered and harmonized so that the whole scheme may be made effectual; the other, that all parts of a law should be preserved. Withal it is the duty of the court to follow the cardinal rule that it is the legislative intent which in the final analysis must govern. Feeling strongly that the design of the law-making body was clearly expressed in the first section we do not hesitate to adopt the view that it meant the remedy to be available in all events where changes in circumstances justified the chancery court in reviewing and readjusting alimony allowances and relationships between divorced parents and their children.

It is argued that the title apprised no one of the provisions of the law about custody of children or its operation retroactively. That the reader may have before him this title we quote it: "An Act to Provide Under Certain Conditions Suit Money, Including a Reasonable Attorney's Fee, to a Divorced Wife, or Husband in Proceedings Subsequent to the Rendition of a Fnal Decree of Divorce by the Courts of This State." It is true that custody of children is not mentioned, but that is certainly one of the matters which may be adjudicated "in Proceedings Subsequent to the Rendition of a Final Decree of Divorce.' So long as the recipient of alimony remains unmarried and until children of divorced parents reach majority, the courts are always open to consider and determine modification of orders fixing alimony and custody. It was not the primary purpose of the act to regulate such proceedings long since recognized and sanctioned by the courts, but to vest authority in the courts to tax money and counsel fees. That is the prime subject of the act, and of it there was ample notice.

We have the conviction that the law is not susceptible of the criticism that it is retroactive simply because of its application to future supplementary proceedings where the final decree in the original divorce suit had been recorded before its passage. The title we have quoted was, however, not sufficient to give notice that it was meant to operate retrospectively, that is, on proceedings of that kind which had already been instituted. See Van Loon v. Van Loon, 132 Fla. 535, 182 So. 205.

The petition for modification sought to be reviewed was filed before the act became effective. The appeal here by certiorari being but a step in that cause we are unable to see how the appellant may avail herself of the advantages of the law. Therefore her motion is

Denied.

TERRELL, CHAPMAN and ADAMS, JJ., concur.

BROWN, J., concurring specially.

BUFORD, C. J., and SEBRING, JJ., adhere to original opinion.

ON REHEARING

BROWN, J., concurring specially:

Section 16 of Article III of our Constitution provides that each law shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title. The title and body of the Act here under review, Chapter 21881, Acts of 1943, read as follows:

"An Act to Provide Under Certain Conditions Suit Money, Including a Reasonable Attorney's Fee, to a Divorced Wife, or Husband in Proceedings Subsequent to the Rendition of a Final Decree of Divorce by the Courts of This State.

"Be It Enacted by the Legislature of the State of Florida:

"Section 1. Whenever, subsequent to the rendition of an absolute decree of divorce by any of the Courts of this State, either party thereafter in good faith prosecutes or defends further proceedings, either in respect to the custody of the children of such divorced parties, or in respect to the

enforcement or modification of alimony, provided for by such divorce decree, or any other matter arising as a direct result of such divorce decree, the Court may, in the exercise of a sound judicial discretion allow to the divorced wife, or husband and order the divorced husband, or wife to pay such sums for suit money, including a reasonable attorney's fee, as from the circumstances of the parties and the nature of the case shall be fit, equitable and just.

"Section 2. Any order so made under the provisions of this Act shall be enforced in the same manner as are other chancery orders or decrees.

"Section 3. This Act shall apply in all cases now pending or hereafter instituted in which the final decree of divorce was recorded prior to the effective date of this Act.

"Section 4. This Act shall become effective immediately upon becoming a law."

The words 'in proceedings subsequent to the rendition of a final decree of divorce," referred to in the title, is quite broad and general in its terms. The same might be said as to the words "under certain conditions." However, the first section of the Act shows what those conditions are, and also defines the words "in proceedings subsequent to the rendition of a final decree of divorce," etc.

"The words "under certain conditions," as shown by Section 1, mean (1) that the proceedings shall be prosecuted or defended in good faith by the party who seeks the benefit of the Act and (2) that the proceedings must be in respect to the custody of the children of the divorced parties, or the enforcement or modification of alimony, provided by the previous divorce decree, or (3) any other matter arising as a direct result of such divorce decree, and (4) that the Court shall exercise a sound judicial discretion before making any allowance for suit money, or attorney's fee, in the light of the circumstances of the parties and the nature of the case, and (5) that such allowance, if made, shall be fit, equitable and just.

The title to the Act indicates, as is usually the case, that the Act is intended to be prospective in its operation. There

is nothing in the title to indicate that the Act should have any retroactive effect.

It is true that Section 1 of the Act begins as follows:

"Whenever, subsequent to the rendition of an absolute decree of divorce by any of the courts of this State, either party thereafter in good faith prosecutes or defends further proceedings," etc.

But the Legislature evidently intended the word "whenever" to mean "whenever after the passage of this Act," because this Act confers a new right not hitherto provided by law. Furthermore, Section 2 indicates that the Act is prospective in its nature.

So, except as to Section 3, the title and the body of the Act evidence the intent of the Legislature that this Act should have a prospective operation and should only apply to proceedings under the Act instituted after the effective date of the Act, although of course such supplementary proceedings provided for by the Act may be based upon a divorce decree which had been rendered before the Act was passed. But Section 3, if literally construed, would limit the operative effect of the Act to proceedings subsequent to the rendition of a final decree of divorce which was recorded *prior* to the effective date of the Act. It is possible that the Legislature intended Section 3 to read somewhat as follows:

'This Act shall *also* apply in all *subsequent proceedings* now pending or hereafter instituted in which the final decree of divorce was recorded prior to the effective date of this Act."

On the other hand, the Legislature may have considered that it was introducing something new into our laws and that it might be wise to limit the scope of the operation of the Act to only those subsequent proceedings brought in cases in which the final decree of divorce was granted and recorded prior to the effective date of the Act, and that they meant just exactly what they said in Section 3. However, if that is what the Legislature really intended to say, Section 3 is not embraced in the title of the Act. There is nothing in the title which indicates any intention whatever to confine

"the subsequent proceedings" to only those divorce decrees which were recorded prior to the effective date of the Act.

It seems to me therefore that Section 3 should be regarded as eliminated from the Act because it is not embraced within the subject of the Act as expressed in its title, but on the contrary is in conflict with the subject expressed in such title. This conclusion would leave the Act, with the exception of Section 3 standing.

A provision in the body of an act which is entirely outside of the purpose set forth in its title is null and void and may be regarded as eliminated from the act where the remainder of the act is within the title and constitutes a workable law. Volusia County v. State, 98 Fla. 1166, 125 So. 375, 813; Savannah, etc. R. Co. v. Geiger, 21 Fla. 669; Martin v. Dade Muck Land Co., 95 Fla. 530, 116 So. 449; Disston v. Board of Trustees, 75 Fla. 653, 79 So. 295; State v. Sullivan, 99 Fla. 1070, 128 So. 478; Smith v. Chase, 91 Fla. 1044, 109 So. 94.

The title of an act cannot be relied upon to add to the act, but it may serve to aid in the construction of the body of the act and as evidence of the legislative intent. State v. Yeats, 74 Fla. 509, 77 So. 262; Jackson Lumber Co. v. Walton County, 95 Fla. 632, 116 So. 771.

I must confess that this case presents a difficult question. I concurred in the opinion of Mr. Justice SEBRING on the original hearing and I am loath to depart from the well reasoned opinion which he wrote in that case, but when I read the title to the act and body of it as a whole, I am inclined to think that by applying the principles above stated, we can regard Section 3 as eliminated and uphold the validity of the balance of the Act, without doing violence to the legislative intent. In other words, taking the object and purpose of the act as expressed in its title, we cannot say that the Legislature would not have passed the act if Section 3 had not been included therein. As pointed out in Mr. Justice SEBRING's opinion, this section would render the act a species of special or class legislation, whereas, if that section be eliminated, as not being within the title, the general pur-

pose and intent of the act, which is general and salutary in its nature, is preserved.

For this reason, I concur in the order made by the majority of the Court, which is in instance and effect the same as that made on the original hearing.