QUESTIONS: 1. Does detainer of a motorist for a noncriminal infraction constitute a lawful arrest for the purpose of allowing a subsequent chemical test for intoxication? 2. Is a mandatory hearing required by s. 318.19, F. S., when property damage is between $51 and $250?
SUMMARY: The detaining for a noncriminal traffic infraction or for allegedly driving under the influence of alcoholic beverages, based on probable cause, is a sufficient "lawful arrest" to satisfy the statutory requirements of s. 322.261(1)(a), F. S., to allow a subsequent chemical test for intoxication. A mandatory hearing is not required by s. 318.19(2), F. S., as it incorporates the provision of s. 322.27(1)(b), until a violation of the traffic laws has resulted in property damage in excess of $250. Responding to your first question, Ch. 74-377, Laws of Florida, effective January 1, 1975, decriminalizes a number of formerly criminal traffic offenses by downgrading these offenses to what are to be known as "infractions." A determination of whether a detainer for a noncriminal "infraction" is tantamount to an arrest is necessary in order to answer your initial question. In Gustafson v. State,243 So.2d 615 (4 D.C.A. Fla., 1971), a motorist was stopped on the suspicion of a peace officer that he was driving while intoxicated. Upon conviction, Gustafson appealed to the Fourth District where he argued, among other things, that this stop was unreasonable and therefore unlawful under the Fourth Amendment to the United States Constitution. The court held that: . . . [T]he act of an officer in stopping an automobile and approaching it while armed and in uniform constitutes a seizure of the person, no matter how brief the detention. Albeit for a short time, the liberty of the occupants is restrained just as much as if the officer had made a formal arrest and then subsequently released the "arrested" individuals. The court then cited Terry v. Ohio,392 U.S. 1 (1968): "It must be recognized that whenever a police officer arrests an individual and restrains his freedom to walk away, he has `seized' that person." Detention for a noncriminal traffic infraction under the new law, Ch. 74-377, supra, falls within this definition of a "technical" arrest. In the situation where a motorist has been detained for a traffic infraction, his person has been seized by law enforcement officials and prohibited from continuing on his way, regardless of the brevity of the delay. The liberty of the individual has been restrained the same as if he had been placed under arrest and then released. It must be recognized, on the other hand, that not all instances in which a vehicle is stopped on the state's roads constitute technical arrests. A license check is such a case. City of Miami v. Aronovitz, 114 So.2d 784 (Fla. 1959). Detention of a motorist for a routine investigation for a stolen car, Nicholson v. United States, 355 F.2d 80 (5th Cir. 1966), or detention of robbery suspects, Lowe v. State, 191 So.2d 303 (3 D.C.A. Fla., 1966), would not be a technical arrest. In these cases there is lack of probable cause. In stops for traffic infractions, however, the officer must have some probable cause to make the stop. Once the stop is made, the motorist is detained in the sense that he is temporarily deprived of his liberty and is subjected to the authority of the law. This is a technical arrest. Another factor to be considered in determining whether detention for a traffic infraction constitutes a lawful arrest is the nature of the penalties imposed thereon. The new statute provides for monetary fines for violations of the traffic law. Although these fines are designated as "civil" in nature, their essential character is criminal. The imposition is in the form of a penalty which is enforced by the sovereign, or state, rather than by personal individual enforcement. Their purpose is to deter unlawful conduct, not to compensate a private individual for a civil wrong committed by the offender. See AGO 072-60. Once it has been determined that detention for a traffic infraction under Ch. 74-377 is a technical arrest, the question then becomes whether such an arrest satisfies the requirements of s. 322.261(1)(a), F. S. This statute, commonly known as the "implied consent" law, provides that chemical tests for intoxication may be given to any person who accepts the privilege of operating a motor vehicle while within the State of Florida, if he is lawfully arrested for any offense allegedly committed while driving under the influence of alcoholic beverages. It further provides that the test "shall be incidental to a lawful arrest." A lawful arrest without a warrant is one which is predicated upon probable cause to believe that an offense has been or is in the process of being committed. In the instance where a motorist is detained for a traffic infraction, there is also present probable cause to believe that the law is being or has been disobeyed. Since probable cause must exist in cases of traffic infractions as a predicate to a lawful detention, such detention also meets the standard of a lawful arrest. So long as adequate probable cause exists, detention is lawful whether it is a "technical" arrest or a full stationhouse arrest. Chapter 75-298, Laws of Florida. This conclusion — that detention of a motorist for a noncriminal infraction constitutes a lawful technical arrest for the purpose of allowing a subsequent chemical test — must not be read so as to allow indiscriminate use of chemical tests upon any motorist detained for a traffic infraction. The peace officer must have probable cause to believe that the motorist is intoxicated before he may administer the test, in order to comply with the requirements of s. 322.261(1)(a), F. S. In circumstances where the initial detention of the motorist is for a noncriminal traffic infraction, and the peace officer subsequently discovers evidence of intoxication, he may have probable cause to arrest for driving while intoxicated (which is an offense which remains criminal by its exception from the new law). This probable cause would be sufficient for a lawful arrest, and this arrest also would provide the basis for giving the chemical test. In response to your second question, s.318.19(1), F. S., provides for a mandatory hearing for "any infraction which results in an accident that causes the death or personal injury of another or property damage in excess of $250," while s. 318.19(2), F. S., provides for a mandatory hearing for "[a]ny infraction which would, if the person is convicted, result in the suspension or revocation of his driver's license or privilege under ss. 322.26 and 322.27." Reference to s. 322.26 in s. 318.19(2), F. S., is erroneous as none of the offenses listed in that section qualify as an "infraction" and will be deleted from the statutes by reviser's bill. Section 322.27(1)(b), F. S., authorizes the Department of Highway Safety and Motor Vehicles to suspend an operator's or chauffeur's license upon a showing that he: (b) Has been convicted of a violation of any traffic law which resulted in an accident that caused the death or personal injury of another or property damage in excess of $50; which latter subsection appears to conflict with the provisions of s.318.19(1), F. S., in that there is a different minimum property damage specified. It must first be remembered that s. 318.19, F. S., only provides that a person violating the terms of s.318.19(1), (2), and (3) shall not have available to him the provisions of s. 318.14(2) and (4), F. S. The provisions of s.318.14(2) and (4) are provisions which permit a person cited for an infraction to either post bond and forfeit the same or pay the civil penalty by mail or in person within 10 days of the date of the infraction. These two sections in substance permit the payment of a civil penalty without the necessity of a hearing before the court. It therefore follows that if the privilege of not attending a hearing is taken away, then a person charged with an infraction, who has lost that privilege by statute, is required to appear before the court. When an infraction occurs which results in an accident causing death or personal injury to another or property damage, the question evolves as to what amount of property damage is necessary to cause the person committing the infraction to be required to appear before the court for hearing. It is obvious that subsection (1) of s. 318.19, F. S., is in conflict with subsection (2), as the former provides for property damage in excess of $250 while the latter (by incorporating s. 322.27(1)(b), F. S.), provides for property damage in excess of $50. If paragraphs of a statute are so inconsistent that they cannot be harmonized or reconciled, the statute must be construed in a manner which will give effect to the purpose of the statutes and to legislative intent. Reyes v. Banks, 292 So.2d 39. All parts of a statute must be considered and harmonized so that the whole legislative scheme may be made effectual and the cardinal rule in construing a statute is that the legislative intent must govern in the final analysis. Chiapetta v. Jordan, 16 So.2d 641. It is also important to note that the construction of a statute by the agency or body charged with its administration is entitled to great weight and will not be overturned until clearly erroneous. State ex rel. Biscayne Kennel Club v. Board of Business Regulation,276 So.2d 823. The Department of Highway Safety and Motor Vehicles administers the provisions of s. 322.27, F. S., and does not suspend a driver's license for an infraction of any traffic law which resulted in property damage until said property damage is in excess of $250. It therefore must follow that in following the cardinal rule in the interpretation of conflicting sections of a statute as expressed by the courts of this state and in harmonizing and reconciling the legislative intent, after consideration of the construction of the statute by the agency charged with the statute's administration, a mandatory hearing would not be required under s. 318.19(2), F. S., as it incorporates s. 322.27(1)(b), until the property damage exceeds $250.